* Of the United States Court of Claims, sitting by designation.

UNITED STATES of America, Appellee,

v.

Robert G. ALTOMARE, Appellant.

No. 79–5146.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1980.

Decided June 17, 1980.

**6**

Barbara H. Fleisher, Charleston, W. Va. (Stanley W. Preiser, Frederick D. Fahrenz, Preiser & Wilson, Charleston, W. Va., on brief), for appellant.

William A. Kolibash, Asst. U. S. Atty., Wheeling, W. Va. and Stephen G. Jory, U. S. Atty., Elkins, W. Va., (William D. Wilmoth, Asst. U. S. Atty., Wheeling, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, RUSSELL and HALL, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

As a result of his alleged involvement in illegal gambling activities the Prosecuting Attorney of Hancock County, West Virginia, Robert G. Altomare, was indicted April 5, 1979,[1] on three counts for violating, and conspiring to violate, in 1977 through 1979, the Racketeer Influenced and Corrupt Organizations Act (RICO)[2] and for violating, on January 31, 1979, the Obstruction of Justice Act,[3] by endeavoring to induce a witness before a grand jury to testify falsely. At the same time he also stood indicted,

---

1. This indictment replaced a prior indictment of February 6, 1979, charging Altomare with essentially the same violations but citing a West Virginia bribery statute that had been repealed. The superseding indictment merely substituted references to the current bribery provision for the incorrect citations.

2. 18 U.S.C. § 1962 provides in pertinent part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

3. 18 U.S.C. § 1503 provides:

Whoever corruptly . . . endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States Commissioner or other committing magistrate, . . . in the discharge of his duty, . . . shall be fined not more than $5000 or imprisoned not more than five years, or both.

as of February 6, 1979, for conspiring during 1979 to obstruct the enforcement of the criminal laws of West Virginia with the intent to facilitate an illegal gambling business.[4] Convictions ensued May 2, 1979, upon all of the charges and Altomare appeals.[5]

■ In his brief, appellant makes 11 points against the judgments. His fundamental defense is that the office of Prosecuting Attorney of Hancock County is not an "enterprise" within the condemnation of RICO.[6] We reject such a narrow interpretation of RICO and hold that a public entity, such as the prosecutor's office here, may be an "enterprise" within the coverage of

the statute. *Accord United States v. Baker*, 617 F.2d 1060 (4th Cir. 1980). Concurring in the conclusion reached by other courts in all but one of the previous decisions touching on this question,[7] we find nothing in the clear language of the statute nor in the legislative history to suggest that Congress intended entirely to exempt such entities from the sweep of this legislation.

■ Altomare next asserts that the County Prosecuting Attorney's office did not have the requisite nexus with interstate commerce to be within the jurisdiction of RICO. Because of the very nature of the powers and duties conferred upon it, how-

**4.** 18 U.S.C. § 1511. Obstruction of State or local law enforcement

(a) It shall be unlawful for two or more persons to conspire to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, with the intent to facilitate an illegal gambling business if—

(1) one or more of such persons does any act to effect the object of such a conspiracy;

(2) one or more of such persons is an official or employee, elected, appointed, or otherwise, of such State or political subdivision; and

(3) one or more of such persons conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business.

**5.** The trial with a jury began on April 3, 1979, in the United States District Court for the Northern District of West Virginia, at Wheeling.

**6.** In RICO, "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

**7.** *See United States v. Grzywacz*, 603 F.2d 682 (7th Cir. 1979), *petition for cert. filed*, — U.S. —, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980); *United States v. Frumento*, 563 F.2d 1083 (3rd Cir. 1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978); *United States v. Forsythe*, 560 F.2d 1127 (3rd Cir. 1977); *United States v. Brown*, 555 F.2d 407 (5th Cir. 1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978); *United States v. Barber*, 476 F.Supp. 182 (S.D.W.Va. 1979), *appeal docketed*, No. 79–5278 (4th Cir. Oct. 15, 1979); *United States v. Vignola*, 464 F.Supp. 1091 (E.D.Pa.1979), *aff'd*, 605 F.2d 1119 (3rd Cir. 1979), *cert. denied*, — U.S. —, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980).

The sole decision diverging from this pattern was the district court's dismissal of a RICO count characterizing the State of Maryland as the "enterprise" in *United States v. Mandel*, 415 F.Supp. 997 (D.Md.1976), *rev'd*, 591 F.2d 1347 (4th Cir. 1979), *rev'd en banc*, 602 F.2d 653 (4th Cir. 1979), *cert. denied*, — U.S. —, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). The dismissal of that particular count was never raised on appeal, so this court did not address the issue. Most recently, however, another panel of this court has held that a county sheriff's department may be an enterprise under RICO, specifically criticizing and rejecting the contrary implications of the district court's opinion in *Mandel*. *United States v. Baker*, 617 F.2d 1060 (4th Cir. 1980).

Correspondingly, the courts are all but unanimous in their refusal to read RICO as prohibiting only the infiltration of legitimate organizations by racketeers. Instead, this circuit and most others have held that the term "enterprise" as it is used in RICO encompasses entities established solely for illicit purposes as well as legitimate businesses. *See United States v. Whitehead*, 618 F.2d 523 (4th Cir. 1980); *United States v. Aleman*, 609 F.2d 298 (7th Cir. 1979); *Manchester v. United States*, 605 F.2d 1198 (3rd Cir. 1979); *United States v. Rone*, 598 F.2d 564 (9th Cir. 1979); *United States v. Swiderski*, 593 F.2d 1296 (D.C.Cir. 1978), *cert. denied*, 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); *United States v. Elliott*, 571 F.2d 880 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Altese*, 542 F.2d 104 (2d Cir. 1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977). The Sixth Circuit stands alone in arriving at the opposite result. *United States v. Sutton*, 605 F.2d 260 (6th Cir. 1979).

Thus, the courts have almost uniformly refused to adopt the narrow reading of "enterprise" that would have that word connote only legitimate, private, commercial entities.

ever, that office necessarily is an institution "engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(c). The record reveals that interstate telephone calls regularly were placed from the prosecutor's office, that certain of the supplies and materials purchased and used by the prosecutor's office had their origins outside of West Virginia, and that persons who were not citizens or residents of the State were involved in investigations and litigation conducted by the prosecutor's office. These contacts provide a sufficient basis for invoking RICO's jurisdiction over the prosecuting attorney's office.[8] *See Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *United States v. Campanala*, 518 F.2d 352, 364 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

■ Altomare's third argument focuses on the content of the April 5 indictment. He submits first that no allegation that he attempted to influence the testimony of a grand jury witness should have been made in Count I of the indictment (charging a substantive violation of RICO, 18 U.S.C. § 1962(c)), nor in Count II of the indictment (charging conspiracy to violate RICO, *id.* § 1962(d)). We find, however, that this alleged obstruction of justice properly constituted a part of the "pattern of racketeering activities" in which Altomare stood accused of participating. The obstruction of the grand jury inquiry promised to preserve his ability to conduct the prosecutor's office in an unlawful manner and thus was integrally related to the offenses charged in Counts I and II. *See United States v. Thevis*, 474 F.Supp. 117, 131 (N.D.Ga.1979).[9]

■ Similarly, we find no merit in appellant's related contention that the third count of the April 5 indictment, charging Altomare with a violation of 18 U.S.C. § 1503[10] on the basis of his attempt to influence the grand jury witness, was improperly included in the indictment. To the contrary, because the obstruction was closely connected with the RICO offense, the joinder of this charge was permissible under the Federal Rules of Criminal Procedure. *See* Fed.R.Crim.P. 8(a), (b). Even assuming Altomare raised a timely and adequate objection to this joinder,[11] the refusal of the District Judge to sever under Rule 14 was

---

**8.** The Government need not demonstrate that the alleged acts of racketeering themselves directly involved interstate commerce. *United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979); *United States v. Nerone*, 563 F.2d 836, 852–54 (7th Cir. 1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978); *United States v. Vignola*, 464 F.Supp. 1091, 1097–1100 (E.D.Pa.1979), *aff'd*, 605 F.2d 1119 (3rd Cir. 1979), *cert. denied*, — U.S. —, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980). Appellant's reliance on *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), is misplaced in that the language of the Sherman Act establishing the interstate commerce requirement there discussed, *see* 15 U.S.C. § 1, differs from the relevant language in RICO.

**9.** Appellant relies on *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), and *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), in arguing that the attempted obstruction should not be viewed as a part of the illegal activities charged in Counts I and II. Regarded, instead, as a later attempt to cover up the prior violations, Altomare maintains, the obstruction should not be used as one of the overt acts supporting the charges of Counts I and II.

That distinction, however, has no validity in this case. As the Court stated in *Grunewald*:

> [A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely . . . that the conspirators took care to cover up their crime . . . . .

353 U.S. at 401–02, 77 S.Ct. at 972. In this case, Altomare's attempt to obstruct the grand jury process was not merely an attempt to cover up a previously completed crime, but was an effort to prolong the unlawful activities of the enterprise in which he and his co-conspirators were engaged. Rather than requiring us to infer that the conspirators had reached an additional agreement to conceal their crime, the obstruction charged here is a part of Altomare's conduct of the enterprise, the establishment and continuation of which were the goals of the conspiracy.

**10.** *See* note 3 *supra*.

**11.** The Government contends that appellant failed to raise any challenge to the structure of the indictment at trial and thus should forfeit his right now to argue its flaws.

neither inimical to the Rule nor an abuse of discretion. *See, e. g., United States v. Thevis*, 474 F.Supp. at 129–31; *United States v. DePalma*, 461 F.Supp. 778, 790–91 (S.D.N.Y.1978).

The remaining points upon which Altomare seeks reversal comprise the following grievances: that the evidence showed that there were a number of unrelated conspiracies rather than the single conspiracy charged; that the rush to trial deprived Altomare of his rights under the Fifth and Sixth Amendments; that the consolidation by the District Judge, *sua sponte*, of the two indictments for trial was unwarranted and hurtful to Altomare's cause; that the dismissal of a juror prior to deliberations was improper and infringed Altomare's constitutional entitlement to a jury trial; that the District Judge erred in refusing to hold that entrapment of Altomare had been established as a matter of law; that Altomare was prejudiced by the District Judge's failure to make a preliminary determination of audibility and admissibility of certain tapes adduced in evidence; that the closing argument of the United States Attorney exceeded the bounds of propriety and fairness; that Altomare was denied his right to effective representation of counsel. Each of these plaints has been reviewed and weighed and found not to necessitate a modification of the convictions.

Appellant's prayers for remand of the case to the District Court for dismissal of the indictments or for the award of a new trial are rejected.

Affirmed.