**UNITED STATES of America, Appellee,**

v.

**John D. LONG, Appellant.**

**No. 80–5102.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1981.

Decided June 12, 1981.

**240**

A. Camden Lewis, Columbia, S. C. (Barnes, Austin & Lightsey, Columbia, S. C., William B. Long, Jr., Long, Black & Gaston, Greenville, S. C., on brief), for appellant.

Lionel S. Lofton, Asst. U. S. Atty., Charleston, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., William G. Rhoden, Third Year Law Student on brief), for appellee.

Before BUTZNER, PHILLIPS and ER-VIN, Circuit Judges.

BUTZNER, Circuit Judge:

John D. Long, a South Carolina State Senator, appeals his conviction for violating and conspiring to violate the Racketeer Influenced and Corrupt Organization (RICO) Act, 18 U.S.C. § 1962(c) and (d). Long assigns the following errors: his Senate seat, described in the indictment as an Office of Senate, was not an "enterprise" as defined by the Act; the activities of his office do not affect interstate commerce; the court improperly admitted tapes of recorded conversation; and the jury should not have been furnished transcripts of the tapes. We affirm.

## I

Long and Billy Dean Roark, a Senate employee, were charged with accepting bribes, in violation of South Carolina law, paid to induce Long to procure state jobs for the persons who gave the bribes. Roark pled guilty and testified against Long.

The evidence disclosed the following undisputed facts. Roark urged an acquaintance to buy a state job from Long. This man told an agent of the Federal Bureau of Investigation about Roark's suggestion and agreed to act as an informant for the FBI. Wearing a tape recorder, the informant met several times with both Roark and Long, and he paid $700 to Long and $800 to Roark in return for Long's promise to get him a state job. The informant then introduced Roark and Long to an FBI agent who said he was looking for state employment. The agent also had several meetings with Long and Roark, all of which were taped by a body recorder. At one of these meetings, the agent paid Long $500 as a down payment for a state job. Although both the informant and the agent obtained interviews with state agencies, including the state Alcohol Beverage Control Commission, neither was given state employment before the grand jury returned the indictments against Roark and Long.

Roark corroborated the testimony of the informant and the agent. Another witness testified that he had paid Long $1200 in return for a promise of state employment.

## II

The indictment charges Long with violations of §§ 1962(c) and (d) of the RICO statute, which state:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

Long claims that the indictment is insufficient because the Office of Senator in the South Carolina legislature is not an "enterprise" within the meaning of RICO.

Section 1961(4) of RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The indictment charges that "[t]he Office of Senate, District Number 5, Office Number 1 [which Long held] is an 'enterprise' as defined by Title 18, United States Code, Section 1961." Long claims that the statutory definition of enterprise should not be interpreted so broadly as to encompass the political entity of a state senate seat. He contends that such an expansive definition poses a "threat of federal control and intimidation over the discretionary acts of a state senator."

The Act states that "[t]he provisions of this title [RICO] shall be liberally construed to effectuate its remedial purpose." Pub.L. No.91–452, § 904; 18 U.S.C.A. § 1961 (notes). Complying with this mandate, courts of appeals considering the specific question whether public entities constitute "enterprises" have answered affirmatively, holding that such entities as a police department,[1] a state Bureau of Cigarette and Beverage Taxes,[2] and a city traffic court[3] are "enterprises" within the scope of the RICO statute.

One of the few cases holding that a public entity is not an "enterprise" is *United States v. Mandel*, 415 F.Supp. 997 (D.Md. 1976). The district court in that case dismissed a RICO count that rested on the allegation that the state of Maryland was an enterprise. Long relies heavily in his brief on *Mandel*.

The district court's order in *Mandel* on the "enterprise" issue was not appealed to this court. In two recent RICO cases, however, we have indicated our disapproval of that decision. We have held, in accord with the majority of the cases, that RICO should be construed to include public entities as enterprises. *See United States v. Altomare*, 625 F.2d 5 (4th Cir. 1980) (state prosecutor's office constitutes an enterprise); *United States v. Baker*, 617 F.2d 1060 (4th Cir. 1980) (sheriff's department constitutes enterprise).

Long's arguments are refuted by the rationale of *Baker*. There we pointed out that the definition of an enterprise contained in § 1961(4) did not differentiate between public and private individuals or entities. Moreover, we emphasized that the congressional statement of purpose and findings in the Organized Crime Control Act, of which RICO is a part, denounces racketeering activities because, among other evils, they "subvert and corrupt our democratic processes." 617 F.2d at 1060, quoting Pub.L.No.91–452 § 1; 18 U.S.C.A. § 1961 (notes). Neither the Act nor the courts' interpretation of it support the contention that its enforcement threatens the discretion state officials must exercise in the discharge of their duties. On the contrary, the definition of "racketeering activity" contained in § 1961(1) pertinent to Long's case involves "bribery . . . which is chargeable under state law . . . ." It is the law of South Carolina, not federal law, that places this predicate offense beyond the pale of a senator's discretion. The Act sustains, rather than threatens, the integrity of the South Carolina Senate.

### III

■ To establish a violation of the RICO statute, the government must show that the enterprise affects interstate commerce. As our decision in *Altomare* points out, however, the government need not demonstrate

---

1. *United States v. Grzywacz*, 603 F.2d 682 (7th Cir. 1979).

2. *United States v. Frumento*, 563 F.2d 1083 (3d Cir. 1977).

3. *United States v. Vignola*, 464 F.Supp. 1091 (E.D.Pa.), *aff'd* 605 F.2d 1199 (3d Cir. 1979).

that the acts of racketeering themselves directly involved interstate commerce. 625 F.2d at 8 n.8. Therefore, it is not necessary for the government to prove that Long's acceptance of bribes had some effect on interstate commerce. It must only show that the enterprise of a state senate office affects interstate commerce.

In *Altomare*, 625 F.2d at 8, we held that the enterprise of county prosecutor had sufficient nexus with interstate commerce because:

> [t]he record reveals that interstate telephone calls regularly were placed from the prosecutor's office, that certain of the supplies and materials purchased and used by the prosecutor's office had their origins outside of West Virginia, and that persons who were not citizens or residents of the State were involved in investigations and litigation conducted by the prosecutor's office.

The government established that in fulfilling the duties of his office, Long served as a member of the Senate Finance Committee, the Banking and Insurance Committees, and the Labor, Commerce and Industry Committee. He was the chairman of the Senate Invitations Committee. The Clerk of the South Carolina Senate testified that the Finance Committee considered the annual appropriations bill, which for 1979 consisted of approximately 1.5 billion dollars of state funds plus 1.4 billion dollars of federal funds and revenue funds derived from license and gas fees. Funds appropriated by the Finance Committee are used for operating expenses and purchases by state agencies. One such agency is the Alcohol Beverage Control Commission, which is responsible for issuing licenses for the beer,

wine, and liquor coming into South Carolina through interstate commerce.[4] When this cumulative evidence of interstate effect is compared to the evidence in *Altomare*, we think it plain that there was jurisdiction under the RICO statute.

## IV

█ Long claims that the government failed to lay a sufficient foundation for the introduction of the taped recordings of conversations concerning the bribes. Relying on *United States v. McKeever*, 169 F.Supp. 426 (S.D.N.Y., 1958) *rev'd on other grounds*, 271 F.2d 669 (2d Cir. 1959),[5] Long asserts that the government failed to show there had been no changes, additions, or deletions made in the tapes. Long's brief alleges:

> Yet Appellants presented a very highly accredited expert witness, one who had tested *sound* tape for the FBI on numerous occasions, who testified under oath, that he had no doubt but that there were splices and erasures in the original tapes. At that point, Appellees presented an FBI agent who had worked with testing sound tape, who stated that any suspicious indications on the tape could be explained by other events than deliberate tampering.

In *Durns v. United States*, 562 F.2d 542, 547 (8th Cir. 1977), the court explained that the foundation required for admitting tapes was designed to meet the broad goal of insuring that only competent and reliable recorded evidence adverse to the accused is allowed to go to the jury, and the decision to admit or deny evidence in any specific case must be viewed in light of this goal. The FBI agent and the FBI informant both testified that the tapes accurately repre-

---

4. In its argument that the senate office affects interstate commerce, the government notes that this ABC Commission was one of the state agencies to which Long sent the FBI informant and agent in their search for jobs.

5. *McKeever*, 169 F.Supp. at 430, held that a party seeking to introduce taped recordings establishes as a foundation the following facts:

 (1) That the recording device was capable of taking the conversation now offered in evidence.

 (2) That the operator of the device was competent to operate the device.

 (3) That the recording is authentic and correct.

 (4) That changes, additions or deletions have not been made in the recording.

 (5) That the recording has been preserved in a manner that is shown to the court.

 (6) That the speakers are identified.

 (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

sented their conversations with Roark and Long. Roark's testimony corroborated the events revealed by the tapes. Long has presented no evidence suggesting that the tapes misrepresent the conversations, even though Long would be aware of such misrepresentation, at least regarding taped conversations in which he was a participant. Furthermore, the informant, the agent, and Roark were subject to cross-examination. The government adequately proved the other requirements for the admission. We find no error in admitting the tapes, notwithstanding the testimony of Long's expert witness. *See United States v. Albert*, 595 F.2d 283, 289–90 (5th Cir. 1979).

### V

 Finally, we find no error in the court's ruling that the jury could be furnished transcripts of the tapes while listening to the recordings. Long's counsel had been given access to the tapes and transcripts before trial, but his brief does not point out any discrepancies between them. The stenographer who prepared the transcripts was not an essential witness, because the agent responsible for their preparation testified to their accuracy. *United States v. Rochan*, 563 F.2d 1246, 1252 (5th Cir. 1977). The district court properly instructed the jury that if they detected any discrepancy between the transcripts and the tapes, they were to consider as evidence only what they heard on the tapes. The use of typed transcripts as aids to the jury in listening to the tapes is a matter within the sound discretion of the trial judge. *United States v. West*, 574 F.2d 1131, 1138 (4th Cir. 1978); *United States v. Hall*, 342 F.2d 849, 853 (4th Cir. 1965). The record contains no suggestion that this discretion was abused.

*AFFIRMED.*