**GOLDRICH, KEST & STERN, a California Partnership, Plaintiff,**

v.

**CITY OF SAN FERNANDO, Defendant.**

**No. CV 82–1653–RJK.**

United States District Court, C.D. California.

Aug. 27, 1985.

---

Fadem, Berger & Norton, Richard D. Norton, M. Reed Hunter, Santa Monica, Cal., for plaintiff.

Rutan & Tucker, Robert S. Bower, Eric R. Newman, Costa Mesa, Cal., for defendant.

## MEMORANDUM OF DECISION

KELLEHER, Senior District Judge.

This matter is before the Court on the motion of City of San Fernando ("San Fernando" or "City") for attorney's fees. Plaintiff Goldrich, Kest & Stern ("Developer") filed this suit in April, 1982, alleging a number of civil rights violations. On March 14, 1985 the Court granted City's motion for summary judgment in its entirety; a Memorandum Decision ("Decision") entered on May 28, 1985, explained the Court's ruling. The City now seeks those attorney's fees incurred in the preparation of defense of this action. Having carefully considered the voluminous record in this case, the Court finds that defendant City is entitled to recover attorney's fees in the sum of $57,537. To that extent, the Court hereby GRANTS City's motion.

Facts

Developer owns several contiguous parcels of undeveloped realty (the Herrick Manor property) located within the city lim-

its of both San Fernando and of Los Angeles. Although already subdivided, Developer sought to resubdivide the property and looked to develop a high density, low and moderate income housing project on the site.

Since 1929, and at the time Developer purchased the Herrick Manor property, the San Fernando portion of the parcel had been zoned R1—single family residential, 7500 square foot lots. Developer persuaded the San Fernando City Council ("City Council") to adopt an ordinance which would have rezoned the San Fernando portion of Herrick Manor from R1 to R2 (medium density residential). Angered City residents forced the suspension of the ordinance's effective date and convinced the City Council to hold a special referendum on the rezoning issue. The San Fernando electorate resoundingly defeated the ordinance, thereby allowing the Herrick Manor property to retain its R1 designation.

In July, 1982 Developer filed a complaint in the Central District, seeking to overturn the referendum. City moved to dismiss, Developer agreed to do so and, in lieu of the suit, Developer filed an alternative development plan with the City. Once the City Council vetoed said alternative, Developer filed the instant action. Therein, Developer alleged that the referendum: (1) denied the property holder an economically viable use of the property; (2) exceeded the City's police powers; and (3) constituted discriminatory and exclusionary non-rezoning in violation of the Fifth and Fourteenth Amendments.

Procedural History

City filed a motion to dismiss for failure to state a claim, Rule 12(b)(6), Fed.R.Civ.P. The Court took the matter under submission, and on September 20, 1983, filed an extensive Memorandum of Decision ("Memo"), granting defendant's motion. Therein, the Court determined that City's refusal to rezone was not a constitutionally recognized taking. The Court based this finding on the principles of condemnation law espoused by the Circuit in *Haas v. City of San Francisco*, 605 F.2d 1117 (9th Cir. 1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980), that the loss of the "highest and best" use of a parcel of property could not find relief in the U.S. Constitution. Further, the Court believed that City's actions concerning the Herrick Manor property involved a reasonable exercise of its police powers. Finally, the Court also found that Developer did not have a requisite standing to raise the equal protection claims of unnamed third parties. In no uncertain terms, the Court explained that "[r]egardless of the 'economic viability' of plaintiff's property as it is presently zoned, it is precisely what [Developer] bargained for when it purchased a parcel of land zoned R–1 [sic] with all the economic limitations which that zone designation entails." Memo at 7.

Developer's proposed first amended complaint was lodged with the Court, yet was withdrawn by Developer for a retooled version, the second amended complaint. City renewed its 12(b)(6) motion; on January 23, 1984, the Court granted said motion and dismissed the second amended version of the complaint. At the hearing, the Court admonished Developer for its conclusory recitals of the alleged taking. The Court advised counsel of the necessity to allege, and to later prove, City's deprivation of *any viable* economic use of the Herrick Manor property.

On April 9, 1984 the Court undertook the now familiar task of evaluating Developer's complaint, the third amended edition, on Rule 12(b)(6) grounds. Therein, Developer alleged that City would not permit *any development* of the Herrick Manor parcel, *whatsoever*. At the time, the Court was skeptical of such accusations and believed that said assertions were merely an exercise in semantics instituted so as to avoid another dismissal. The oral joustings at the hearing, however, satisfied the Court that, for Rule 12(b)(6) purposes, Developer had finally presented sufficient allegations to avoid dismissal. Ultimately, Developer filed a fourth amended com-

plaint, setting forth the allegations mentioned above.

From the initiation of this suit, the Court had expressed its doubts concerning the purportedly unconstitutional actions of the City. The Court repeatedly warned Developer of the heavy evidentiary burden that must be shouldered to prove a taking in this failure to rezone context. The Court's skepticism was further fueled by Developer's lackadaisical attitude toward this litigation. Developer frequently missed deadlines and was forced to file numerous ex parte applications for extensions of time. Such laxness, while not directly reflective on the merits of the action, did suggest to the Court that Developer fully understood the thin foundation supporting its federal action.

A heated letter from counsel for Developer to the managing partner of the contract City Attorney accused counsel for the City of misleading and inflammatory actions concerning a so-called settlement proposal made by Developer. A review of the record, however, contradicts said retorts. Specifically, it appears to the Court that Developer was attempting to use any avenue available to coerce the submission of the City Council into action favorable to Developer's interests. City remained firm, however, and successfully avoided a full-blown confrontation. City had a right to avoid the so-called settlement offer for, at this stage of the action, Developer had virtually no chance of success on the merits.

For about six months the parties jockeyed during the discovery process. In October, Developer moved to reopen discovery, alleging a number of baseless grounds for its motion. The Court, generally magnanimous in its discovery extensions, denied Developer's motion, finding it grounded on hollow, unsubstantiated allegations of misdeeds by individuals related to City. In November, Developer moved for the Court to abstain, alleging "changed circumstances." Developer conveniently forgot that it had hotly contested a similar motion to abstain, brought by the City in 1982. Instead, Developer attempted an about-face, and argued that "changed conditions" warranted abstention by the district court. In reality, the only changes in this action were Developer's loss of an identical state action, *see infra*, and the conclusion of discovery. The Court retained its jurisdiction and denied the motion to abstain.

Finally, the parties presented cross motions for summary judgment. Developer continued its groundless assault on the motive of the City counsel members, alleging dark intentions and illicit misdeeds. Rule 56, Fed.R.Civ.P., however, requires Developer to present factual substantiation for its claims. Vague unsupported "factual" statements coupled with fiery conclusions of constitutional rhetoric served as the mainframe of Developer's presentations. Yet, such submission, replete with diversionary constitutional arguments, could not survive the deluge of factual averments, depositions, affidavits, and the like offered by City in support of its motion. In its Decision, this Court explained that "Developer has made it this far in this dispute by presenting unfounded allegations and unsubstantiated complaints about the treatment it had allegedly received at the hands of the City. Whenever a critical point in the case arrived, Developer dregged up constitutional argument after constitutional claim to ward off dismissal. The facts remain the same as they have throughout the matter; Developer took a risk and lost." (p. 29) Accordingly, Developer could not genuinely place at issue any material fact. The Court granted City's motion for summary judgment in its entirety.

In August, 1984 City adopted a Residential Planned Development Overlay Zone. Said zone would permit the development of the Herrick Manor property in an economically feasible manner. Developer failed to submit a proposal to the City Council until after the Court announced its intended decision to enter summary judgment in favor of the City. In a similar context, documents presented to the Court offer a glaring picture of Developer's in-

tention to use this litigation as a factor of intimidation, forcing City acquiescence to plans that failed to meet the zoning requirements of R1. It appears that developer elected not to undertake any development of the property, fearful that such action might undercut Developer's constitutional allegations that City was not allowing any development of the property. Such inaction belies any belief that City was preventing the development of the Herrick Manor property, and supports the view that Developer knew full well the precarious grounds upon which its complaint rested.

From this litany one could glean the Court's belief that this action lacked merit from the onset. For over four years Developer has sought a way to force a plan of development through the City Council of the City of San Fernando. This litigation served as a vexatious attack on the motives and decisions of the City Council members and on the City residents themselves. From the beginning, the Court was of the impression that the allegations were unfounded and meritless. The Court's impressions later proved correct, and the Court concluded this matter by granting summary judgment in City's favor.

### The State Decision

On the identical set of facts, Developer sued for relief in the Superior Court for the State of California, Los Angeles County. *See Goldrich Kest & Stern v. City of San Fernando*, No. C 406 247 (March 16, 1984). The trial court announced its decision ("State Decision") on January 13, 1984, following a court trial of the facts at issue. Therein, the court found that: (1) the referendum election substantially complied with the requirements of the California Election Code; (2) the referendum refusing to rezone the Herrick Manor property did not constitute an unconstitutional taking of Developer's property; (3) City's refusal to rezone was a reasonable exercise of its police powers; and (4) San Fernando had not discriminated against Developer. An appeal of the State Decision has been filed by Developer.

The State Decision serves as a full and complete vindication of City's actions within the context of the referendum of 1980. From the Court's viewpoint, the State Decision should have put Developer on notice of the ill-fated nature of its federal action. The State Decision, after a full trial of facts identical to those presented herein, afforded Developer no relief whatsoever. The Court is of the view that the only difference between Developer's claims within each action is one of remedy; the federal matter allowed the recovery of damages unavailable under California law. Developer's reservation of federal issues, filed early in the state case, has no bearing on the fact that the two matters tracked tantamount actions, events, and responses. In sum, the State Decision conclusively exposed the dubious character of the allegations proffered in this Court.

### Section 1988

■ It is the general rule that, in the absence of legislation providing otherwise, litigants must pay their own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Recently, statutes have begun to offer a flexible approach to the attorney's fees issue, providing for the discretionary award of such fees to victorious litigants. More specifically, "[i]n any action or proceeding to enforce a provision of ... [Section 1983] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs." 42 U.S.C. § 1988. Thus, this Court may elect to award fees to the "prevailing party" in this action.

■ Having obtained a suitable disposition, with an award of summary judgment in its favor, City is the prevailing party in Developer's § 1983 action. *See Lummi Indian Tribe v. Oltman*, 720 F.2d 1124, 1125 (9th Cir.1983). The proper standard used to determine entitlement to an award of fees, however, varies based on the identity of the successful party. Plaintiffs in civil rights actions "should ordinarily recover an attorney's fee unless special circumstances

would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Prevailing defendants, on the other hand, face a much more stringent test.

In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court set the standard for an award of attorney's fees to a prevailing civil rights defendant. "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a [civil rights] case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in bad faith." *Id.* at 421, 98 S.Ct. at 700. The Court's analysis of the background of attorney's fees in civil actions proved illuminating. "If anything can be gleaned from these fragments of legislative history, it is that while Congress wanted to clear the way for suits to be brought under the [Civil Rights Act], it also wanted to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420, 98 S.Ct. at 700.

The Court, however, advised against retroactive cynicism, explaining that "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 421–22, 98 S.Ct. at 700. The Supreme Court has specifically applied the *Christiansburg* standard to actions for attorney's fees brought under Section 1988. *See Hughes v. Rowe,* 449 U.S. 5, 14–16, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980) (per curiam).

The Ninth Circuit has affirmed the award of attorney's fees to prevailing defendants, *Ellis v. Cassidy,* 625 F.2d 227 (9th Cir.1980), has upheld a district court's denial of attorney's fees, *Dosier v. Miami Valley Broadcasting Corp.,* 656 F.2d 1295 (9th Cir.1981), and has reversed an attorney's fees granted by the district court. *Mayer v. Wedgewood Neighborhood Coalition,* 707 F.2d 1020 (9th Cir.1983) (per curiam). The Ninth Circuit has explained that the strong policy considerations favoring an award of attorney's fees to a victorious civil rights plaintiff do not apply in favor of a successful defendant. *Silver v. KCA, Inc.,* 586 F.2d 138, 143 (9th Cir.1978). Otherwise, the Circuit has not provided guidance to the district courts on the application of *Christiansburg* to prevailing defendant's requests for attorney's fees.

### Prevailing Defendants in Other Circuits

"[C]ourts have awarded attorneys [sic] fees to prevailing defendants where no evidence supports the plaintiff's position or [where] the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate." *Smith v. Smythe-Cramer Co.,* 754 F.2d 180, 183 (6th Cir.1985). Another Circuit examined the *Christiansburg* standard in the context of conflicting policy concerns. The policy question is "simply stated, whether the social benefits of deterring vexatious suits against the government outweigh the social costs arising from the risk that some meritorious suits will be discouraged as well." *Copeland v. Martinez,* 603 F.2d 981, 990 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980). Elsewhere, a Circuit found a district court judge "particularly well qualified to make the partially subjective findings necessary for [an] award of attorney's fees." *P. Mastrippolito and Sons, Inc. v. Joseph,* 692 F.2d 1384, 1387 (3d Cir.1982).

Finally, another Circuit suggested close judicial oversight by the district court of pending cases is a suitable means to establish a record on which an award of fees might rest. "Such monitoring enables trial courts, at early stages in litigation, to alert certain·plaintiffs to the perilous course that

their suits may be taking due to an increasingly apparent lack of support for their claims." *Hermes v. Hein,* 742 F.2d 350, 358 (7th Cir.1984). Judicial oversight, and admonitions to the plaintiff, "can later provide a point of reference for awarding fees in a manner that encourages the abandonment of claims that become hopeless, but does not discourage the nonfrivolous of civil rights suits." *Id.*

In seeking to determine whether a suit is frivolous, unreasonable or groundless, as required by *Christiansburg,* courts have focused on several factors. "Among those considered are whether the issue is one of first impression requiring judicial resolution [citation]; whether the controversy is sufficiently based upon a real threat of injury to plaintiff [citation]; whether the trial court has made a finding that the suit was frivolous under *Christiansburg* guidelines, and whether the record would support such a finding [citation]." *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981).

The Award of Fees Against Individual Plaintiffs

An exhaustive review of Title VII/civil rights actions by individual plaintiffs proved informative. On numerous occasions, courts have found that a plaintiff's complaint met the frivolous test of *Christiansburg* and have awarded attorney's fees to prevailing defendants.

### District Court Actions

For example, in *Soto v. Barcelo,* 559 F.Supp. 739 (D.P.R.1983), the court granted defendant's motion for summary judgment after more than three years of litigation. While charges of pernicious civil rights violations by the defendant abounded, plaintiffs could do little to muster any proof of the alleged unconstitutional actions. Upon review of the entire record, the court found that the "case was frivolous, unreasonable, [and] without foundation at its inception." *Id.* at 744. To that effect, the court noted that as "the case unfolded, the absence of support for plaintiff's allegations ... be-

came all the more apparent.... Any reasonable observer would have concluded that the [defendant] had not committed the acts alleged by plaintiffs. Plaintiffs simply had no evidence in support of their claims...." *Id.* Thus, where "a plaintiff proceeds on the strength of allegations [alone], which are unsupported and indeed contradicted by unrebutted deposition testimony, attorney's fees should be awarded to a defendant who obtains summary judgment in his favor." *Id.* at 743 (footnote omitted).

In *Brown v. Fairleigh Dickinson University,* 560 F.Supp. 391 (D.N.J.1983), the court found against the plaintiff and awarded attorney's fees of about $21,000 to various individual defendants. The case history, replete with specious motions and pretrial delays, thoroughly supported the court's finding that the allegations against the individual defendants were frivolous. "Plaintiff produced no evidence that any of these men participated in the decision to discharge him.... The baseless nature of the claims against the [defendants] should have been apparent to plaintiff before trial.... Indeed, the court warned plaintiff of the consequences of not adducing evidence of [defendants] culpability at trial...." *Id.* at 404–05.

In *Rogers v. Kroger Co.,* 586 F.Supp. 597 (S.D.Tex.1984), plaintiff brought a Title VII action, alleging a denial of an equal employment opportunity because of his race. The court found the action ill brought and poorly prosecuted, twice dismissing the dispute for lack of prosecution. In awarding $10,000 in fees under Section 1988, the court explained that plaintiff had prosecuted a "spurious claim, with ... total arrogance and indifference to court procedures [causing] defendant to incur four years of needless inconvenience and expense. By promulgating the attorney's fees statutes, the legislature has provided the court with a means by which such an abuse of the civil rights laws ... can be deterred." *Id.* at 603.[1]

---

1. For additional district court cases awarding

attorney's fees against individual plaintiffs un-

## Circuit Court Affirmances

Circuit courts have affirmed the award of fees against individual civil rights plaintiffs, regardless of the amount. In *Charves v. Western Union Telegraph Co.*, 711 F.2d 462 (1st Cir.1983), the First Circuit affirmed an attorney's fee award of $25,-000 to Western Union. The Circuit found the trial court's dismissal of this sex discrimination case—after three days of trial—completely appropriate. Further, the large fee award was supported by the record; a finding "that the plaintiff's case is frivolous provides an adequate foundation for the court to exercise its discretion to award attorney's fees to the prevailing defendant. *Christianburg* [sic] makes this crystal clear." *Id.* at 464.

In *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985), the Seventh Circuit affirmed a fee award to the defendant of over $42,000. Plaintiff had brought this action under Sections 1983 and 1985(3) for an alleged violation of his First and Fourteenth Amendment rights arising out of his termination of his county employment. The district court granted summary judgment in favor of all defendants and awarded a fee against the plaintiff. The Circuit noted that "the district court made explicit findings that Munson's claims were without merit and simply preposterous ... that the plaintiff had used the judicial system to carry on a personal vendetta against persons who performed the onerous and generally unappreciated tasks of local government." *Id.* at 697. In view of the sound findings below, "a detailed analysis of the facts after a review of the volumes of depositions, interrogatories, pleadings, requests for admissions and legal arguments filed during three years of thorough discovery and development of the factual record, [a Circuit Court] should be particularly reluctant to disturb the district court's conclusions unless there are clear contradictions in the record that the district court is incorrect." *Id.* (citation omitted).[2]

## Chilling a Corporate-Type Civil Rights Action

Surely, the Supreme Court has encouraged civil rights plaintiffs to act as "private attorneys general" so as to vindicate "a policy that Congress considered of the highest priority." *Piggie Park, supra,* 390 U.S. at 402, 88 S.Ct. at 966. Yet, the fear of chilling those legitimate claims of the victims of civil rights violations is sometimes overcome by the desire to protect "defendants from burdensome litigation having no legal or factual basis." *Christiansburg, supra,* 434 U.S. at 420, 98 S.Ct. at 700.

■ The above discourse on Section 1988 attorney's fees awards against individual plaintiffs reveals a willingness to allow such a recovery when the civil rights actions brought were contrived, baseless, and unreasonable. The saddling of such individuals with sometimes huge fee awards indicates a desire to keep the federal court clear of the hubris of frivolous, often vengeful, civil rights claims. This suggests that the courts should be even more prepared to award attorney's fees against corporate-type plaintiffs who present meritless civil rights claims. Said group of plaintiffs is certainly well equipped to finance a civil rights suit. For the Court, the chilling effects of an award of attorney's fees to prevailing defendants as against a corporate-type plaintiff is de minimus. At the very least, courts should not hesitate to award attorney's fees against

---

der Section 1988, see *Rapisardi v. Democratic Party of Cook County,* 583 F.Supp. 539 (N.D.Ill. 1984); *Hughes v. Defender Assoc. of Philadelphia,* 509 F.Supp. 140 (E.D.Pa.1981); *Woods v. State of New York,* 494 F.Supp. 201 (S.D.N.Y. 1980); *Sierra v. Datapoint Corp.,* 459 F.Supp. 668 (W.D.Tex.1978). *Cf. EEOC v. Shoney's, Inc.,* 542 F.Supp. 332 (N.D.Ala.1982); *EEOC v. Union Camp Corp.,* 536 F.Supp. 64 (N.D.Mich.1982).

**2.** For other affirmances of attorney's fees awards, see *Harris v. Group Health Assoc., Inc.,* 662 F.2d 869 (D.C.Cir.1981); *Hutcherson v. Board of Supervisors of Franklin County,* 742 F.2d 142 (4th Cir.1984); *Lewis v. Brown & Root, Inc.,* 711 F.2d 1287 (5th Cir.1983); *Tonti v. Petropoulous,* 656 F.2d 212 (6th Cir.1981) ($101,-800!); *Coleman v. General Motors Corp.,* 667 F.2d 704 (8th Cir.1981).

corporate civil rights plaintiffs when the *Christiansburg* standard has been met.[3]

■ The Court chooses to exercise its discretion under Section 1988, and to award attorney's fees to the City, as the prevailing defendant in this action. It is the Court's opinion that "the defects of [Developer's] suit [were] of such magnitude that the plaintiff's ultimate failure [was] clearly apparent ... at some significant point in the proceedings...." *Smith, supra,* 754 F.2d at 183. The State Decision, based on identical facts and discovery, acts as a "significant point in the proceedings." By this date, Developer must have realized the ill-founded nature of its federal claims. Evidence produced at trial proved unconvincing to a Superior Court judge, yet Developer continued on, seeking to proffer the same proof to this Court.

On January 29, 1985 this Court dismissed Developer's second amended complaint; this action coincides with the State Decision of January 14, 1984. At the hearing the Court alerted plaintiff of "the perilous course that [its suit] may be taking due to an increasingly apparent lack of support for [its] claims." *Hermes, supra,* 742 F.2d at 358. This Court's oversight now "provide[s] a point of reference for awarding fees...." *Id.* In sum, by January, 1984 it should have been patently obvious to Developer that this action was meritless, grounded on baseless, unsubstantiated allegations. This Court finds that the continued prosecution of the federal claims by Developer was "frivolous, unreasonable [and] without foundation."

Amount of Fees

■ It is clearly within the broad discretion of the district court to determine the amount of attorney's fees to award to City. *Rutherford v. Pitchess,* 713 F.2d 1416, 1420 (9th Cir.1983). It behooves the Court to analyze the quality and quantity of attorney efforts in line with the factors of *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).[4] Further, while the recent U.S. Supreme Court opinion of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), involved the reasonableness of a fee award to a prevailing plaintiff, the Court is of the opinion that the reasoning of Justice Powell applies just as readily to the fee issue of prevailing defendants. Thus, this Court recognizes that it "remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award ... [and realizes that] the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley, supra,* 461 U.S. at 440, 103 S.Ct. at 1943; *Rivera v. City of Riverside,* 763 F.2d 1580 (9th Cir.1985).

Herein, Messrs. Bower and Newman spent 636.3 hours on the preparation and defense of this case, from the time of the entry of the State Decision. Counsel seeks

---

3. Having considered the alternative legal argument presented by each side, this Court chooses to rest is findings solely on the Court's understanding of *Christiansburg* and its progeny. For example, City presents a five party "test" to assist the Court's reasonableness analysis. Alternatively, Developer asserts that good faith reliance on counsel insulates it from a fee sanction. This is certainly not the law of this Circuit. *Anderson v. Air West, Inc.,* 542 F.2d 522, 526 (9th Cir.1976); *see Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962); *see also, Prate v. Freedman,* 583 F.2d 42, 48 (2d Cir.1978).

4. The twelve Kerr factors are:
1. The time and labor required;
2. The novelty and difficulty of the questions;

3. The skill requisite to perform the legal service properly;
4. The preclusion of employment by the attorney due to acceptance of the case;
5. The customary fee;
6. Whether the fee is fixed or contingent;
7. Time limitations imposed by the client or the circumstances;
8. The amount involved and the results obtained;
9. The experience, reputation, and ability of the attorneys;
10. The undesirability of the case;
11. The nature and length of the professional relationship with the client; and
12. Awards in similar cases.
*Kerr, supra,* 526 F.2d at 70.

fees exclusively for hours spent by attorneys; proofs of their efforts do not include extra-attorney assistance. Even though the allegations of Developer's complaint were not overly challenging on an intellectual level, the amount of paperwork and research necessary to convince the Court of the groundless nature of Developer's claims surely proved burdensome and taxing. The Court finds that Messrs. Bower and Newman argued ably before this bench; thorough documents, exhaustive research, and articulate presentations were the benchmark of the duo's performances. As contract attorneys to City, Rutan & Tucker bill out at the composite rate of $90 per hour. It is the Court's belief that said rate is much lower than sums regularly paid in the private practice of most major metropolitan legal markets in the United States.

The Court's grant of summary judgment in City's favor reveals the complete success of counsels' defenses. Further, Developer sought huge sums, and employed reputable land use counsel in its attack on the R1 zone. As gleaned from documents submitted to this Court, Messrs. Bower and Newman have acted as city attorney for eight separate municipalities, and both have extensive backgrounds in the public law area. As noted above, each performed to a level that befits the federal system. Finally, though research has not produced a similar award of fees, numerous cases have awarded sizeable fees to prevailing defendants in alternative contexts. *See supra.*

The Court is mindful of the admonitions offered by the *Hensley* decision. Yet, the above recitation satisfies the Court that the award of fees is reasonably related to the outcome of the proceedings. There exists a reasonable relationship between the degree of success and the amount of the award. *Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941. The award of $57,537 is completely justified on the record.

The *Lindy* Multiplier

City requests the use of a multiplying factor of two, relying on the frequently cited case of *Lindy Bros. Builders, Inc. of*

*Phila. v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973). The Court has considered the use of a multiplier in this case, but finds that Section 1988 contemplates such a factor only in the rarest of cases. The use of a multiplier may be appropriate where "the results obtained ... represent a significant achievement." *White v. City of Richmond,* 713 F.2d 458, 461 (9th Cir. 1983). The Court does not wish to detract from the efforts by prevailing counsel. Yet, the Court finds the use of a multiplier of two unwarranted in this instance.

Conclusions

For the reasons listed above, the Court granted City's motion for fees, in the sum of $57,537. City is also entitled to the recovery of costs of $1,122.22.

The Clerk shall send, by United States mail, a copy of this Memorandum of Decision to counsel for the parties.