Patrick J. WOODS, an employee of the New York State Department of Labor, Plaintiff,

v.

The STATE OF NEW YORK; the Department of Labor of the State of New York; Philip Ross, Industrial Commissioner, State of New York; Victor Bahou, President of the Civil Service Commission, State of New York; the Civil Service Commission of the State of New York; Louis Sitkin, Appeal Board Chairman, Department of Labor, State of New York; Irving Trow, Chief Administrative Law Judge, Department of Labor, State of New York; David Weisenberg, Senior Administrative Law Judge, Department of Labor, State of New York; Irving Blachman, Senior Administrative Law Judge, Department of Labor, State of New York; Martin Rice, Senior Attorney, Department of Labor, State of New York; Jane Rubin, Manager of Local Office 518, Department of Labor, State of New York; Joshua Williams, Manager of Local Office 590, Department of Labor, State of New York; Baldazzaro Abbruzo, Director of Personnel, Department of Labor, State of New York; Antonio Murphy, Assistant Personnel Director, Department of Labor, State of New York; Nathan Vogel, Personnel Administrator, Department of Labor, State of New York, Defendants.

No. 78 Civ. 1914.

United States District Court,
S. D. New York.

July 17, 1980.

Sweeney, Cunningham & Krieg, New York City, for plaintiff; Marc S. Krieg, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants; Margaret A. Goederer, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, an unemployment insurance referee, now referred to as an Administrative Law Judge, employed by the Depart-

ment of Labor of the State of New York, brought this action under sections 1981 and 1983 of the Civil Rights Act,[1] the fifth and fourteenth amendments to the United States Constitution, and various sections of the New York Constitution. The plaintiff alleged that his work performance for the year 1977 had wrongfully and unjustifiably been rated as unsatisfactory by his superiors and by the Department of Labor's Performance Rating Board; that he had been denied proper training necessary to perform his assigned duties; that his colleagues and superiors, acting in concert, had "harass[ed] and persecut[ed,] . . . defam[ed], slander[ed], [and] libel[ed] him"; and that the Performance Rating Board constituted to review his unsatisfactory rating in fact "prejudged the merits of [his] case, denigrated [his] selected counsel and representative," and in various other ways "conspired" with the other defendants to deprive the plaintiff of his employment, due process and equal protection rights. Fifteen defendants were named in the suit. These included the State of New York; the Department of Labor and the Civil Service Commission; three Senior Administrative Law Judges of the Department of Labor who reviewed and rated plaintiff's performance for the year 1977; the members of the Labor Department's Performance Rating Board; and various other officials of the Civil Service Commission and of the Department of Labor who upheld the unsatisfactory rating and found that plaintiff's charges of discrimination were wholly unsubstantiated.

In an opinion of April 11, 1979, familiarity with which is assumed,[2] this Court granted the defendants' motion for summary judgment and dismissed the action on the ground that there was no support in the record for plaintiff's allegations of harassment and invidious discrimination, and because the grievance review mechanism provided by the Civil Service Commission more

than satisfied any due process requirements imposed by the Constitution. That decision was affirmed on appeal without opinion.[3] Defendants now move for an award of attorney's fees in the sum of $10,106.22. The issues raised on this motion must be considered against the background of events contemporaneous with and preceding the instant lawsuit.

The plaintiff, in addition to this action, filed eight other formal grievances, complaints, or lawsuits against various of these same defendants concerning events arising out of the same unsatisfactory performance rating. These complaints were brought in four different tribunals, including the Grievance Board of the Civil Service Employees' Association, the New York State Division of Human Rights (where plaintiff filed four separate complaints), the Supreme Court of New York (where plaintiff filed an Article 78 proceeding seeking to vacate his unsatisfactory work performance rating), and the Small Claims Court. The five proceedings before the Grievance Board and the Division of Human Rights were prosecuted through an appeal; the other three actions were withdrawn after plaintiff failed to secure the relief he sought. In not a single instance did plaintiff prevail before any of these tribunals on the merits of his alleged claim. In each instance, the defendants prevailed, either on the merits or because plaintiff withdrew the claim. Indeed, the Division of Human Rights found with respect to each of the four complaints before it that there was no probable cause to believe that the defendants had either discriminated or retaliated against the plaintiff, and that there was "no evidence to support the allegations as charged." These determinations were made on December 20 and 27, 1978, or two months before the State had moved for summary judgment in the instant action. Nonetheless, plaintiff continued to assert virtually identical claims before the Griev-

**1.** 42 U.S.C. §§ 1981 & 1983 (1976).

**2.** *Woods v. State of New York*, 469 F.Supp. 1127 (S.D.N.Y.), *aff'd*, 614 F.2d 1293 (2d Cir. 1979).

**3.** 614 F.2d 1293 (2d Cir. 1979).

ance Board, the State Supreme Court, and this Court. Even after his claims had been rejected both by the Division of Human Rights and by this Court, plaintiff commenced two more actions in which he alleged unlawful libel, slander, and retaliation against two co-workers, one of whom is a defendant herein, for events related to the same occurrences at issue here; these actions were brought in the Small Claims Court on June 22, 1979, but were later abandoned by plaintiff.

Although plaintiff appeared *pro se* in this action, he is an attorney with five years of experience as an Administrative Law Judge; as such, he is held to the same standards as any other member of the bar. Moreover, the charges leveled against these defendants are of a very serious nature, drawing into question their probity and rectitude; they involved alleged libel, slander, harassment, intimidation, conspiracy, unjudicial conduct, and dereliction of official duty. Despite the severity of these allegations, the plaintiff presented "no credible evidence"[4] in this action, or in any of the other proceedings to support the charges. In the instant case this Court concluded that plaintiff had "no tenable claim"[5] to survive summary judgment. Furthermore, it is significant that plaintiff's appetite for litigation has increased with each feeding. His first complaint named only two defendants: the New York State Department of Labor and Mr. Irving Blachman, a Senior Administrative Law Judge. With each new complaint the list of defendants grew, embracing those who had acted unfavorably with respect to plaintiff's prior complaints and grievances. These included the three members of the Performance Rating Board (Rice, Williams, and Rubin); the Industrial

Commissioner of the State of New York (Ross), who affirmed the decision of the Performance Rating Board; and the Department of Civil Service, which thereafter affirmed that decision.

The defendants argue that these actions, viewed in context, were part of a continuing pattern of litigation, intended to harass the defendants in retaliation for the unsatisfactory performance rating; as such, they indicate bad faith on the plaintiff's part, and justify the imposition of attorney's fees against the plaintiff. The State argues that even under the "American rule," which holds that in the absence of legislation to the contrary, parties should bear the costs of their own attorney's fees, the Court is empowered to award fees upon a showing that a litigant has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . .' ";[6] and that in this case, such an award would be appropriate, entirely apart from any statutory claim for counsel fees as the prevailing party.

Although there is much in this record to support defendants' position, we need not reach those issues because here the State need not prove so much. Plaintiff's action was brought under the civil rights statutes; the defendants' motion for fees is based upon a specific statutory provision, 42 U.S.C., section 1988, which provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title . . . the court, in its discretion, may allow a prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[7]

In construing language identical to this in Title VII of the Civil Rights Act,[8] the Su-

---

4. *Woods v. State of New York*, 469 F.Supp. 1127, 1131 (S.D.N.Y.), *aff'd*, 614 F.2d 1293 (2d Cir. 1979).

5. *Id.* at 1132.

6. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (quoting *F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d

703 (1974)). *See also Hall v. Cole*, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973).

7. 42 U.S.C. § 1988 (Supp.1980).

8. 42 U.S.C. § 2000e–5(k), which provides:
 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Com-

preme Court in *Christiansburg Garment Co. v. EEOC*[9] held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[10] In doing so, the Court also endorsed our own Circuit's formulation which permits an award to a prevailing defendant in an action which is "'meritless or vexatious.'"[11] Moreover, the Court held that Congress' purpose in authorizing such an award for a prevailing defendant was not to punish the plaintiff for bad faith, but "to protect defendants from burdensome litigation having no legal or factual basis."[12] Since that decision, the Supreme Court has indicated that the same standard applied in the *Christiansburg* case to Title VII actions is applicable as well to awards of attorney's fees to prevailing defendants under section 1988.[13] Other courts have explicitly so held,[14] and we agree. Indeed, plaintiff himself does not question that *Christiansburg*'s rule is applicable here.

 In seeking to avoid the imposition of attorney's fees, plaintiff argues that he proceeded in good faith throughout, and that he ought not be taxed with counsel fees merely because he failed to prevail in the litigation. Under the *Christiansburg* standard, however, the unsuccessful plaintiff's subjective good faith, or the absence thereof, is not relevant to the award of fees.[15]

Even were that not the case, it is difficult, on the basis of this record, to believe that this plaintiff, an experienced lawyer presumed to be knowledgeable concerning legal rights and the judicial processes, acted in good faith in filing nine contemporaneous complaints involving basically the same incidents and defendants, raising serious and damaging charges, without a modicum of substantiating evidence. In any event, even if the Court were to credit plaintiff's assertions of subjective good faith and assume that the claims made in the instant action were not calculated to harass these defendants, nevertheless, the Court finds that they were "frivolous, unreasonable, or meritless." Consequently, the defendants are entitled to an award of attorney's fees under the statute.

The issue that remains is the appropriate amount of that award. Based upon the affidavit of the Assistant Attorney General who handled this matter from its inception through the appeal to the Court of Appeals which alleges she spent a total of 271.75 hours representing the State defendants' interests, a fee of $10,106.22 is requested which includes services in making this application for fees. The State is entitled to a fee that is fair and reasonable taking into account the nature of the claims, the complexity of the issues, any unusual problems and the time necessarily required in the adequate representation of its interests.

mission and the United States shall be liable for costs the same as a private person.

**9.** 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

**10.** *Id.* at 421, 98 S.Ct. at 700.

**11.** *Id.* (quoting *Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir. 1976)).

**12.** *Id.* at 420, 98 S.Ct. at 700.

**13.** *Roadway Express, Inc. v. Piper*, —— U.S. ——, ——, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980).

**14.** *See Lopez v. Aransas City Independent School Dist.*, 570 F.2d 541, 545 (5th Cir. 1978); *Keown v. Storti*, 456 F.Supp. 232, 243 (E.D.Pa. 1978), *aff'd*, 601 F.2d 575 (3d Cir. 1979); *Ryals*

*v. Azalea City Racing Club, Inc.*, 443 F.Supp. 146, 147 (S.D.Ala.1977), *aff'd*, 579 F.2d 641 (5th Cir. 1978); *Goff v. Texas Instruments, Inc.*, 429 F.Supp. 973, 975 (N.D.Tex.1977). *Cf. Boe v. Colello*, 447 F.Supp. 607, 611 & n. 21 (S.D.N.Y. 1978). *But cf. Kane v. City of New York*, 468 F.Supp. 586, 591–92 (S.D.N.Y.), *aff'd*, 614 F.2d 1288 (2d Cir. 1979).

**15.** The Court stated "the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and . . . the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

Judged by proper standards,[16] the Court regards the amount requested as excessive and concludes that the issues inherent in the case did not require or justify the amount of time upon which the fee request is based. This Court is of the view that all too frequently the time factor, while a consideration, has been overemphasized.[17]

The Assistant Attorney General who was in charge of this matter is a regular employee of the State. The method of calculation submitted in support of the allowance would afford the State a windfall. In calculating the requested fees, the State has reached an hourly rate of compensation for her services by dividing the total number of hours in the standard work year (1643 hours) into her yearly salary during the periods when she allegedly was engaged on the case; on top of this projected hourly rate has been added compensation to reflect health, insurance and pension benefits to which the Assistant would be entitled in addition to her salary. Thus, if the matter had been conducted within one year and she spent, as stated, 271 hours of the 1643 yearly hours alleged to be the standard work year on this matter, the case would have consumed approximately 16% of her time for which the State, by its method of calculation, seeks $10,106.22, during which period her average annual salary was $20,721. Consequently for the balance of the year, if she were engaged in matters for which fee allowances are granted, it would mean the State would be receiving far in excess of the annual salary paid to her.

The issues in this case were not difficult, complex or extraordinary. Preparation of affidavits in support of the motion for summary judgment did not require unusual skill. True, it required, as all matters require, careful preparation and painstaking effort but this is what is expected of competent lawyers such as this Assistant Attorney General. With the issues fairly simple, the relevant facts uncontested, the applicable principles of law settled, and with virtually no discovery by the parties, the Court, not unmindful of the competency of the Assistant Attorney General, is of the view that more time was spent on this matter than was reasonably and necessarily required in the adequate representation of the State's interests. In addition, a substantial portion of time, 57.5 hours (approximately 7 days on an 8-hour daily basis) is allotted to this fee application. Although the Court has discretion to make an allowance for services in the preparation of a motion for fees, in the instant case such an award would not be appropriate.[18] The plaintiff supports his wife and four children on a salary slightly in excess of $25,000. While the State suggests he has some additional income from a private practice which apparently is permitted, no proof has been submitted as to any income from that source; moreover, considering the time required of him in the performance of his official duties, any additional income cannot be substantial. However misguided plaintiff may have been in his litigious activities, the fees to be imposed upon him should be modest but consistent with fair reimbursement to the defendants for those services necessarily required in resisting his claims. The defendants were not acting as private

---

**16.** *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) & 540 F.2d 102 (3d Cir. 1976) (en banc).

**17.** *See Blank v. Talley Indus., Inc.*, 390 F.Supp. 1, 5 (S.D.N.Y.1975); *Levin v. Mississippi River Corp.*, 377 F.Supp. 926, 931 (S.D.N.Y.), *aff'd*, 508 F.2d 836 (2d Cir. 1974).

**18.** *See Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd*, —— U.S. ——, 100 S.Ct. 2570,

65 L.Ed.2d 653 (1980) (if time spent on fees motion is "unnecessarily high, the judge may refuse further compensation or grant it sparingly"); *Boe v. Colello*, 447 F.Supp. 607, 610 & n. 14 (S.D.N.Y.1978). Similarly, the Court has discretion to adjust the amount of an award to reflect the fact that the prevailing agency is supported by public funds. *See Gagne v. Maher*, 455 F.Supp. 1344, 1349 (D.Conn.1978), *aff'd in relevant part*, 594 F.2d 336, 345 (2d Cir. 1979), *aff'd*, —— U.S. ——, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

attorneys general vindicating public rights.[19]

After scrutinizing the entire record, assessing claims of counsel and applying its independent judgment based upon knowledge of all factors pertaining to the case, the Court is of the view that a fair and reasonable amount of compensation for the full and adequate protection of defendants' interests is the sum of $2,500.00.

Submit order within five days upon three days' notice to the other side.

19. By contrast, see Mid-Hudson Legal Services, Inc. v. G. & U., Inc., 578 F.2d 34, 37 (2d Cir. 1978); Carrion v. Yeshiva Univ., 535 F.2d 722, 727 (2d Cir. 1976).