Rudolph COLEMAN, Appellant,

v.

GENERAL MOTORS CORPORATION (GENERAL MOTORS ASSEMBLY DIVISION) and United Automobile Workers Local 25, Appellees.

No. 81–1073.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1981.

Decided Dec. 28, 1981.

Rehearing Denied Feb. 9, 1982.

Doris Gregory Black, St. Louis, Mo., for appellant.

James E. McDaniel (argued), John W. Sunnen, Robert C. Tucker, Barnard & Baer, St. Louis, Mo., Otis M. Smith, Gen. Counsel, J. R. Wheatley, Detroit, Mich., for General Motors Corp.

Morris J. Levin, Sheldon Weinhaus (argued), Levin & Weinhaus, St. Louis, Mo., for United Automobile Aerospace, etc.

Before STEPHENSON and HENLEY, Circuit Judges, and NICHOL,* Senior District Judge.

HENLEY, Circuit Judge.

Rudolph Coleman brought suit against General Motors Corporation (GMC) and UAW Local 25 under Title VII and 42 U.S.C. § 1981, alleging racial discrimination. The district court,[1] sitting without a jury, entered judgment in favor of both defendants and awarded Local 25 $5,000.00 in attorney's fees. Coleman appeals from the district court's judgment in favor of defendants and the award of attorney's fees. We affirm.

Coleman, a black man, was employed at GMC's St. Louis Assembly Plant. In November, 1972 he was assigned to the position of electrical system inspector for the first shift. After a new item was added to his inspection duties, he was unable to perform the additional task without falling behind. Consequently, he was transferred to a different electrical inspection job at the final processing station on January 10, 1973.[2] Appellant filed two grievances on the same day, alleging that his transfer was racially motivated[3] and charging work overload. Shortly after his transfer to the final processing station, appellant complained that he was exposed to hazardous fumes. Accordingly, in February, 1973 he was assigned to do left chassis inspection at a different location in the plant. Still unhappy with his lot, he complained that the work area was too cold and asked to be transferred to his original electrical inspection job. He returned to his former position in February or March, 1973.[4]

In February, 1973 Coleman filed a charge against GMC with the EEOC, claiming various discriminatory acts. He failed to file suit within the ninety day time limit after the EEOC issued a Right to Sue Letter in December, 1976.

On May 5, 1973 appellant was reprimanded when he arrived at work late. He filed a grievance, and the reprimand was subsequently withdrawn from his personnel file.

On September 11, 1973 Coleman was suspended without pay for the balance of his shift plus one day after leaving his position at the assembly line without waiting for a relief man to arrive. After he filed a grievance, a union representative successfully contested the discipline by obtaining pay for Coleman for the time lost.

---

* The Honorable Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation.

1. The Honorable Edward L. Filippine, United States District Judge, Eastern District of Missouri.

2. Despite the transfer, Coleman retained his Electrical Inspector classification and received the same pay.

3. The new item requiring inspection was also added to the duties of the second shift Electrical Inspector, who was white. Since he was able to perform the additional inspection work successfully, he was not transferred to another position. Based on these events, appellant claimed that his transfer was racially motivated.

4. Appellant's reassignment to this job in effect settled the two grievances filed in January, 1973.

In mid-1974 Sylvester Leon Mitchell, a black man, was assigned to do a different type of inspection work at the station adjacent to the one where appellant was working. On November 5, 1974 appellant and Mitchell quarreled briefly after appellant accused Mitchell of stepping into his work area and elbowing him. On the next day the two men engaged in another argument followed by a brief scuffle. Appellant then left his position for one-half hour. When he returned, Mitchell was working inside a car with his legs hanging out the open door. Coleman approached the car and while trying to close the door on Mitchell's legs, stabbed him in the back with a scratch awl.[5] Mitchell, who apparently received some warning, kicked the car door open, and it hit Coleman in the face. Mitchell then jumped from the car and ran with Coleman, still holding the scratch awl, in pursuit. The foreman physically stopped Coleman forty to fifty feet from his station. Several co-workers witnessed this incident.

Shortly after this confrontation, disciplinary interviews, which union representatives attended, were conducted with appellant and Mitchell. At his interview Coleman stated that Mitchell had pulled a knife on him and that he had picked up the scratch awl to defend himself.[6] None of the employees who witnessed the incident, however, supported appellant's account that Mitchell had a knife. At the conclusion of the interviews, Mitchell received an indefinite suspension, but was later allowed to return to work.[7] Appellant also received an indefinite suspension and subsequently filed a grievance, which was denied by the foreman.

On November 7, 1974 Coleman filed a discrimination charge against GMC with the EEOC, alleging that he had been laid off and harassed as a result of racial animus and retaliation for the EEOC charge filed in January, 1973.[8]

On the following day, Coleman was notified that his suspension was being converted to a discharge, effective immediately, for his armed attack on Mitchell. Local 25 then processed the grievance filed by appellant following his suspension[9] through the various steps of the grievance procedure available under the collective bargaining agreement. Initial formal and informal settlement efforts failed. At the last informal meeting, the local union representative, addressing GMC's concern that Coleman's reinstatement would lead to further violent confrontations, proposed that appellant undergo psychiatric evaluation. The union representative argued that if the evaluation showed that appellant was not a threat to the other employees, he should be reinstated. GMC agreed to this proposal. Appellant, however, rejected the idea, stating that "he would not plead insanity."

The grievance was then submitted to the regional office of the International Union for resolution. After an unsuccessful settlement attempt,[10] an umpire from the International Union's Detroit headquarters conducted an extensive investigation of the

5. A scratch awl resembles an ice pick. The back wound inflicted with the awl proved to be superficial.

6. Since both men would have been subject to discharge for fighting with weapons, the union representative had advised Coleman, before the interview, to tell management that he and Mitchell engaged in a minor scuffle without weapons. While both Mitchell and Coleman agreed to accept that advice, Coleman abandoned it during his disciplinary interview.

7. In addition, the suspension was removed from his record.

8. The EEOC consolidated this charge with the August 28, 1976 charge filed by Coleman against GMC as a result of his discharge.

These consolidated charges gave rise to the instant appeal.

9. Although the grievance was filed in connection with appellant's suspension, once the suspension was converted to a discharge the grievance covered both disciplinary actions. Hence, a second grievance was unnecessary.

10. It was at this point that Coleman filed the EEOC charge against Local 25 alleging that the union had discriminated against him because of his race by failing to properly represent him after his discharge. This charge, along with the charges against GMC, are the source of the instant appeal.

circumstances surrounding appellant's discharge to determine whether the grievance merited arbitration. He concluded that appellant's claim could not succeed on the merits and consequently withdrew the grievance. Coleman appealed the withdrawal of his grievance to two International Union appellate bodies. After a hearing at which Coleman was represented by counsel, these appeals were denied.

Coleman instituted the instant action on October 31, 1977. After a bench trial that lasted eleven days, the district court concluded that appellant was discharged for a valid, nondiscriminatory reason, that is, for attacking a co-worker with a weapon while at work. *Coleman v. General Motors Corp.,* 504 F.Supp. 900 (E.D.Mo.1981). In reaching this conclusion the court noted that "[p]laintiff's evidence that other GM employees engaged in fights without being discharged [did] not establish racially discriminatory treatment because those fights either did not involve weapons, or were simply not shown to be of the same character as plaintiff's attack on Mitchell." 504 F.Supp. at 906. Additionally, the district court found "no persuasive evidence of disparate treatment by GM in other respects." *Id.* Addressing appellant's claim against Local 25, the court concluded that the union had "fully and fairly processed the ... grievance and even had a reasonable settlement arranged for plaintiff, but plaintiff rejected its terms." *Id.* at 907.

■ After carefully reviewing the decision of the district court and the argument of the parties on appeal,[11] we are convinced that the district court correctly determined that appellant did not present a valid claim of racial discrimination. We conclude that the denial of relief was not based on clearly erroneous findings or a misapprehension of the applicable law.

■ We now turn to appellant's claim that the district court abused its discretion in awarding $5,000.00 in attorney's fees to Local 25. In making this award the court relied on *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), in which the United States Supreme Court held that a prevailing defendant in Title VII litigation may be awarded attorney's fees if a court finds that plaintiff's claim was "frivolous, unreasonable, or groundless, or that [he] continued to litigate after it clearly became so." 434 U.S. at 422, 98 S.Ct. at 700. The district court in the instant case found that "the facts of the case did not establish any basis or foundation for plaintiff's claims against Local 25 under Title VII and 42 U.S.C. § 1981 ...." *Coleman v. General Motors Corp.,* 504 F.Supp. 900 (E.D.Mo. 1981) (order awarding attorney's fees). We agree with this assessment of Coleman's Title VII claim against the union.

Appellant argues that Local 25 violated his Title VII rights by failing to adopt the position, in processing his grievance, that other incidents of fights involving both black and white GMC employees were as grave. He asserts that the instruments used during these fights—a metal chair and a wooden tool box—"were at least potentially aggravating to the same extent" and points out that none of these incidents of fighting resulted in discharge. Thus, appellant concludes that by failing to press this argument Local 25 discriminatorily represented him during the grievance proceedings.

Appellant's "potentialities" argument is unpersuasive. The district court expressly found that the other incidents of fighting were not as aggravated as Coleman's attack on Mitchell. 504 F.Supp. at 906. The union was justified in taking this aggravated con-

---

11. We note that appellant did not file the trial transcript in the instant case. Both GMC and Local 25 moved this court to dismiss the appeal for failure to provide the transcript or any substitute therefor. In a June 5, 1981 order, this court denied the motions, stating:

> The failure of appellant to provide a transcript, or a portion of a transcript, is not fatal

to the jurisdiction of this Court, though it may result in affirmance of the judgment below, depending on the nature of the errors urged by appellant.

We find nothing in the arguments proferred by appellant to warrant reversal.

duct into account in processing Coleman's grievance. It is clear that any difference in treatment was due to the aggravated circumstances of this case rather than appellant's race. We note that in concluding that Local 25 did not treat Coleman differently because of his race, the district court further found:

> The evidence was ... that Local 25 had satisfactorily represented the plaintiff on a number of occasions prior to his suspension and discharge in November, 1974. While [union representatives] might have attempted to persuade plaintiff not to say that Mitchell had a knife, and made no mention of a knife in the Statement of Unadjusted Grievance, this was done not only because Local 25 was representing both men and wanted to put both in the best possible light, but also because none of the other witnesses saw a knife on Mitchell. Moreover, because Mitchell is also black, the Court cannot draw any inference that Local 25 officials tried to downplay the seriousness of Mitchell's actions to put the plaintiff in a bad light simply because plaintiff is black....

*Id.* at 907.

From the circumstances surrounding Local 25's representation of appellant in earlier grievance proceedings and the union's settlement efforts on the grievance relating to his suspension and discharge, we cannot say that Coleman could have reasonably believed that Local 25's actions were tied to any discriminatory motive. Thus, because it is clear that appellant's charge of discrimination against Local 25 was utterly groundless, we sustain the award of $5,000.00 in attorney's fees to Local 25. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. at 421–22, 98 S.Ct. at 700; *Obin v. District 9, International Association of Machinists and Aerospace Workers*, 651 F.2d 574 (8th Cir. 1981).

In affirming the award of attorney's fees, we are mindful of the policy of encouraging vindication of civil rights through private litigation and of the general disposition of the courts to look with some disfavor on awards against plaintiffs. Yet we are aware also of the accommodation to be made between congressional concerns on the one hand for the inability of low income minorities to bear the burden of attorney's fees and on the other for award of fees to those who must defend against unreasonable, frivolous, meritless or vexatious actions. *Mosby v. Webster College*, 563 F.2d 901 (8th Cir. 1977). And finally in this regard we observe that the district court awarded against plaintiff only a small portion of the attorney's fee expense actually incurred by Local 25.

In summary, we affirm the judgment of the district court in favor of GMC and Local 25 and the award of attorney's fees to the union.

