**Dorothy GAUTREAUX, et al., Plaintiffs,**

v.

**Samuel R. PIERCE, Secretary of Department of Housing and Urban Development, et al., Defendants.**

**Nos. 66 C 1459, 66 C 1460.**

United States District Court,
N. D. Illinois, E. D.

May 11, 1982.

See also, D. C., 538 F.Supp. 1004.

Alexander Polikoff, Howard A. Learner, Chicago, Ill., for plaintiffs.

United States Attorney's Office, Chicago, Ill., Robert M. Grossman, Roan & Grossman, Patrick W. O'Brien, Mayer, Brown & Platt, Richard J. Flando, Acting Regional Counsel, Dept. of Housing and Urban Development, Stanley J. Garber, Corp. Counsel, Calvin H. Hall, Gen. Counsel, Chicago Housing Authority, Earl L. Neal, Sp. Asst. Corp. Counsel, Chicago, Ill., Gershon M. Ratner, Associate Gen. Counsel, Carolyn B. Lieberman, Asst. Gen. Counsel, John W. Herold, Edward G. Weil, Jane McGrew, Gen. Counsel, Dept. of Housing and Urban Development, Washington, D. C., Gerald D. Skoning, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On January 25, 1982, this Court denied plaintiffs' motion to modify the consent decree previously entered in this case so as to require that the Department of Housing and Urban Development ("HUD") set aside approximately $324 million of the Government National Mortgage Association's ("GNMA") fiscal 1982 Tandem financing appropriation for section 8 new construction projects in the Chicago area ("Gautreaux projects"). Such extraordinary relief was sought in view of the Reagan Administration's announced intention to ask Congress to abolish the Tandem program in fiscal 1983. At that time, the Court found that there had not been a significant change in circumstances with respect to the viability of the GNMA Tandem program since the

entry of the decree in June of 1981 so as to satisfy the threshold requirement for the relief plaintiffs sought and, moreover, that the balance of the equities did not require modification in order to fulfill the purpose of the decree. *Gautreaux v. Pierce*, 535 F.Supp. 423 (N.D.Ill.1982).[1] The Court did leave open the question whether actual termination of the GNMA Tandem program by Congress, which was only a possibility at the time the decree was entered and when we initially considered the question in January of 1982, would constitute a sufficient change in circumstances to justify a new inquiry into possible modification of the decree and a re-evaluation of the equities involved. *Id.,* mem. op. at 428, n.14.

This matter is now before the Court on plaintiff's renewed motion to modify the consent decree in light of HUD's recent administrative decision[2] to not extend Federal Housing Administration ("FHA") commitments or section 8 reservations for any proposed housing projects that did not receive GNMA Tandem financing in the lottery held on March 9, 1982, and that did not receive alternative financing 60 days thereafter. HUD's refusal to extend the FHA commitments and section 8 reservations for projects that could be completed but for the lack of financing would effectively obviate the need for future GNMA Tandem funding from Congress by eliminating the potential beneficiaries of the program. Plaintiffs therefore contend that HUD's administrative action places this case in the posture contemplated by footnote 14 of our earlier

opinion and order. During oral argument on plaintiffs' renewed motion on March 8, 1982, plaintiffs' counsel advanced an alternative motion that the enforcement of the HUD directive be enjoined and that FHA commitments and section 8 reservations for the Gautreaux projects be extended until such time as Congress decides whether to make GNMA Tandem available in fiscal 1983. By minute order dated March 8, 1982, the Court denied plaintiffs' initial motion for modification of the decree but granted their alternative motion to prevent the enforcement of the HUD directive. We now set forth the rationale for our earlier ruling.

HUD concedes that its administrative directive issued in February, 1982, constitutes a change in circumstances compared to the situation in June, 1981, or January, 1982, but it argues that modification of the decree in light of that change is not required, particularly if plaintiffs' alternative motion to enjoin enforcement of the directive vis-a-vis the Gautreaux projects is allowed. By its administrative directive, HUD has attempted to clear its "pipeline"[3] of projects eligible for GNMA Tandem, but which as yet have not received financing, in anticipation of positive Congressional action on the Administration's proposal to eliminate Tandem from the fiscal 1983 budget. HUD contends that this will enable it to recapture moneys already allocated to these projects by prior reservations and commitments so that such funds might be re-allocated to other section 8 projects in need of assistance. The future of the Tandem pro-

---

1. As set forth in our earlier opinion, courts generally engage in a two-part analysis in determining whether modification of a consent decree is appropriate. As a threshold matter, exceptional circumstances—new, changed or unforeseen at the time the decree was entered—are required. Courts then weigh the equities to determine the hardship on the moving party if modification is denied and the hardship on the party opposing modification if the Court grants the relief sought as well as the impact of modification upon third parties. An important consideration in connection with the second inquiry is whether the purposes of the litigation as incorporated in the decree have been fully achieved. *United States v. United*

*Shoe Machinery Corp.,* 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968); *United States v. City of Chicago and Fraternal Order of Police,* 663 F.2d 1354 (7th Cir. 1981).

2. The administrative directive apparently was issued in early February, 1982, after our late January opinion in this matter.

3. In this context, the "pipeline" is a term of art describing the status of housing developers who have received FHA commitments and section 8 reservations but who are awaiting financing in order to bring their projects to fruition. Projects that have reached this state of readiness are said to be "in the pipeline."

gram itself is still uncertain, however. Apparently, certain bills have been introduced in the House of Representatives that would provide the same $1.9 billion level of funding for the Tandem program in fiscal 1983 as in fiscal 1982, and there is some measure of support for such a continued appropriation. The Administration, however, continues to advocate total elimination of the Tandem program from next year's budget.

Regardless of whether HUD's decision to clear the pipeline without waiting for Congressional action constitutes a change of circumstances sufficient to meet the threshold requirement for modification of the consent decree, *see, e.g., United States v. City of Chicago and Fraternal Order of Police,* note 1, *supra,* the balance of the equities does not favor the Court's intervention at this time nor is such intervention necessary to achieve the purposes of the decree so soon in the implementation process. As we discussed at some length in our earlier opinion in this matter, the parties negotiated the consent decree that plaintiffs now seek to modify during a period of rising interest rates and a corresponding decrease in the feasibility of financing housing development in the conventional manner. The availability of alternatives such as GNMA Tandem thus began to achieve greater importance and the demand for the limited federal funds outstripped the supply well before the consent decree was signed and entered by the Court. Nevertheless, plaintiffs chose to put their faith in a consent decree that did not provide a special set-aside of the limited federal funds for Gautreaux projects, despite the fact that the Administration had already proposed abolishing the Tandem program.[4]

Moreover, section 8 new construction and substantial rehabilitation is only one, albeit an important, stream of relief contemplated by the consent decree. Although that stream has now been reduced to a mere trickle, some relief has still been provided even in the current period of depression in the housing market. Of the original 25 Gautreaux projects in line for GNMA Tandem in January, three received financing after the first lottery held earlier this year and at least seven others received assistance after the second lottery held shortly thereafter. Thus, the Court is unwilling to rewrite the consent decree to the extent requested by plaintiffs. However, under the unique factual circumstances described below, this Court shall afford plaintiffs the alternative relief requested.[5]

The Court is concerned with the impact of HUD's February directive in the Chicago area where that agency has already been adjudged guilty of instituting and promoting racially discriminatory housing practices. It would seem that at least the spirit of the decree requires that HUD not take steps administratively that would make it more difficult for it to live up to its obligations under the decree during the implementation period. To the extent that the HUD directive clearing the pipeline of projects with FHA commitments and section 8 reservations if they are not able to secure financing within a particular period would make it incrementally more difficult to provide the desired relief to the plaintiff class should Congress eventually approve some form of GNMA-Tandem for the next fiscal year, it has added significance in the Chicago area.

Furthermore, although the plaintiffs were aware that the Administration advo-

---

4. As we noted in our earlier opinion, plaintiffs tried and failed to negotiate a provision into the decree that would have provided the relief they now seek through modification of the decree. Certain exigent circumstances aside, a party should not be able to achieve a result through modification of the decree that it failed to achieve through negotiation.

5. The relief afforded should not be misconstrued by the parties as an invitation to seek new creative modes, short of modification, for

varying the terms of the consent decree or the parties' conduct thereunder. It is only because of the special circumstances herein that this Court will depart from its intention to hold the parties to the terms of the consent decree which they freely and knowingly executed. *See Gautreaux v. Pierce,* Nos. 66 C 1459/1460 mem. op. at 7 n.3 (N.D.Ill. May 11, 1982) (IHDA motion with respect to the financing adjustment factor).

cated abolishing the GNMA Tandem program at the time the consent decree was entered, they could have safely assumed that the battle to save Tandem would be fought in Congress where they might have a more sympathetic forum in which to argue against the Administration's proposed budget cuts.[6] HUD's recent administrative directive would cut the ground out from under plaintiffs' argument in favor of continued Tandem funding by eliminating the potential beneficiaries of the program. While plaintiffs may well have anticipated a battle to save the program in Congress, they could have hardly anticipated that HUD would unilaterally act to eliminate the potential beneficiaries of the program and thereby moot any debate, particularly in light of HUD's special obligations in the Chicago area. Any hardship that HUD might suffer by its inability to recapture the FHA commitments and section 8 reservations for the Gautreaux projects is minimal. It therefore seems only fair that HUD be precluded from enforcing the directive at least insofar as it affects the Gautreaux projects until Congress has had a chance to decide the fiscal fate of the Tandem program.

Accordingly, plaintiffs' motion for modification of the consent decree is denied but their alternative motion is granted. The minute order dated March 8, 1982, with the changes suggested by the parties in their April, 1982, letter shall remain the order of this Court. It is so ordered.

---

**6.** Indeed, the Chairman of the House Sub-Committee on HUD-Independent Agencies Appropriations has consistently stated that he favors an extension of GNMA Tandem funding in fiscal 1983.