**Dianne HILL, Plaintiff,**

v.

**BASF WYANDOTTE CORP., Defendant.**

**Civ. No. 9–74125.**

United States District Court,
E. D. Michigan, S. D.

June 30, 1982.

**350**

Lawrence C. Patrick, Jr., and Adam A. Shakoor, Detroit, Mich., for plaintiff.

Ronald M. Green, New York City, and Bennie L. Grier, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

After a nine day bench trial, judgment was entered against the plaintiff in this civil rights action on October 23, 1981. This matter is now before the Court on defendant's motions for attorney fees and for review of the denial of certain costs by the Clerk.

Plaintiff claimed that her employer discriminated against her during the course of her employment because of her race and sex, finally discharging her in retaliation for her complaints about defendant's discriminatory acts. Specifically, plaintiff claimed that she was put on probation and discharged because she refused to acquiesce to the sexual overtures of her supervisor, Reginald Ferrell. She also claimed that she was discriminated against on the basis of her sex because Donna Stacey, her secretary, provided services to a male employee that she did not provide to plaintiff. She claimed that Donna Stacey gave secretarial assistance to a white male that she would not provide to plaintiff. Plaintiff claimed that she was assigned to recruit black employees while white recruiters recruited both black and white employees. She further asserted she was put on probation because she would not participate in the Minority Recruitment Task Force. Finally, plaintiff alleged that she was discharged in retaliation for filing race and sex discrimination charges with the EEOC and for protesting to her employer about her discriminatory treatment.

### A.  Costs

On November 20, 1981, defendant filed a bill of costs with the Clerk of this Court. Plaintiff filed no objections. On January 19, 1982, the Clerk taxed costs in the amount of $1,315.90 for witness fees. The Clerk disallowed costs for pretrial discovery depositions because no explanation had been given for the necessity of expedited service or for the copies made and also disallowed costs for an expedited daily trial transcript. Defendant now seeks to recover such costs in the amount of $5,014.02. Plaintiff asserts that all costs should be denied because her claims were not frivolous, unreasonable or without foundation as required by *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). This argument is without merit, as the *Christianburg* standard applies only to awarding attorney fees. *Northcross v. Board of Education of Memphis*, 611 F.2d 624, 639–40 (6th Cir. 1979). Costs are allowed "as of course to the prevailing party unless the court otherwise directs" by virtue of Fed.R.Civ.P. 54(d). Costs were included in the judgment of this Court against plaintiff. Allowable costs are set out in 28 U.S.C. § 1920.

■ Allowance of costs is within the sound discretion of the district judge. *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 232–33, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964); *Northcross v. Board of Education of Memphis, supra* 611 F.2d at 640. However, this discretion is to be cautiously exercised so that the costs of litigation will not be made so high that litigants will be discouraged from bringing meritorious lawsuits. As the Supreme Court noted in *Farmer v. Arabian American Oil Co., supra* 379 U.S. at 235, 85 S.Ct. at 416:

> We do not read Rule 54(d) as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny. Any other practice would be too great a movement in the direction of some systems of jurisprudence, that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be. Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation.

Section 1920 permits recovery of:

> (2) Fees of the court reporter for all or any part of the transcript necessarily obtained for use in this case;
>
> .    .    .    .    .
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case.

As is clear from the very words of the statute, the cost of only those transcripts necessary to properly present a party's case are allowable.

### 1. *Depositions*

■ The costs of depositions may not be taxed when obtained for the purposes of investigation or preparation for trial. 6 Moore's Federal Practice ¶ 954.77[4] at 1723; 10 Wright & Miller, Federal Practice & Procedure § 2676. The distinction between depositions necessary for use in the case and those obtained merely for an investigatory purpose is a fine one. This Court previously discussed this problem in the case of *Kaiser Industries Corp. v. McLouth Steel Corp.,* 50 F.R.D. 5 (E.D.Mich. 1970), where it was noted that:

> [I]t is necessary to distinguish between depositions which are reasonably necessary to properly present a party's case and depositions used essentially for the purpose of investigation or the kindred purpose of thorough preparation by counsel. Investigation expenses are not chargeable as costs. It is presumably in order to effectuate this distinction that many courts have adopted the practice of permitting taxation of deposition costs such as stenographers' fees for depositions introduced at trial or used in cross-examination of witnesses and disallowing the costs of all other depositions.

*Id.* at 12. Some courts, however, award the costs of depositions that were reasonably necessary when taken, even if not later used at trial. *See, e.g., Electronic Specialty Co. v. International Controls Corp.,* 47 F.R.D. 158, 162 (S.D.N.Y.1969); 10 Wright & Miller, Federal Practice & Procedure § 2676. Courts also have refused to award costs of copies of depositions when the original of the deposition is timely filed and available for use. *Electronic Specialty Co. v. International Controls Co., supra* at 162–63; *Oscar Gruss & Son v. Lumberman's Mutual Casualty Co.,* 46 F.R.D. 635, 641 (S.D.N.Y.1969).

#### a. *April 14, 1980 Deposition of Plaintiff*

■ Defendant requests $36.62 for the costs incurred when plaintiff did not appear for a scheduled deposition. Defendant used the transcript of the cancelled deposition in a motion to compel plaintiff's deposition, filed June 18, 1980. The court deems these costs as reasonably necessary, especially as they were incurred as the result of plaintiff's own lack of cooperation.

**b.** *July 30, 1980 Deposition of Plaintiff*

■ Defendant seeks $479.57 in costs for the preparation of an expedited transcript of a deposition of plaintiff. Defendant claims an expedited transcript was necessary to prepare a motion to compel plaintiff to answer deposition questions. Such a motion was filed on August 19, 1980. On October 1, 1980, at a hearing on the motion, defendant was ordered to file an amended motion, setting out the specific questions defendant claimed plaintiff failed to answer. Such a motion was filed on October 8, 1981. On October 21, 1980 the Court agreed with defendant's characterization of plaintiff's conduct as unresponsive and uncooperative, and ordered plaintiff to answer deposition questions posed. At that time the Court awarded defendant $150 in costs.

Defendant has not shown that plaintiff's July 30 deposition was used at trial. Defendant has already been awarded costs in connection with this deposition. The Court is not convinced of the need for an expedited transcript of the entire deposition, since only portions of the transcript were relied on by defendant in its motion to compel answers, and even those portions were not brought to the attention of the Court until October 8. Therefore, these costs will be refused.

**c.** *Copies of March 17, 1980 and July 30, 1980 Deposition Transcripts*

■ Defendant seeks costs of $88.86 for copies of depositions of plaintiff for local counsel. These costs will not be allowed. The originals of these depositions should have been filed with this Court and available for local counsel's perusal. Defendant has made no showing that the depositions were not so available to local counsel. These duplication costs were not necessary and will not be allowed.

**d.** *November 4, 1980 Deposition of Plaintiff*

■ Defendant seeks $315.17 for costs of an expedited transcript of a deposition of plaintiff taken to prepare requests for production of documents within the discovery cutoff and for use in preparation for trial. Certainly the premium for an expedited transcript was solely for the convenience of counsel to meet a discovery deadline and will not be allowed. Furthermore, defendant has not shown that this transcript was used at trial, merely that it was taken to prepare for trial. As such, it appears to have been taken for an investigative purpose and the costs of its transcription will therefore be denied.

**e.** *Depositions of Ferrell and Tremonti*

■ Ferrell and Tremonti were two of defendant's witnesses who testified at trial. Defendant seeks costs of $379.40 incurred in taking their depositions to prepare its defense. These depositions were not used by defendant at trial. The Court concludes they were taken for investigatory purposes and therefore will not allow such costs.

**2.** *Trial Transcript*

■ As is the case with depositions, the cost of trial transcript is not allowed if procured primarily for the convenience of counsel. *Kenyon v. Automatic Instrument Co.,* 10 F.R.D. 248 (W.D.Mich.1950) *aff'd* 186 F.2d 752 (6th Cir. 1951). If the transcript is furnished at the Court's request, it normally is taxable. 10 Wright & Miller, Federal Practice & Procedure § 2677 at 212–13. Courts consider various factors in their determination of whether a transcript was necessary for use in a case. Wright & Miller identify some of these factors as:

> the length of the trial, the complexity of the issues, whether the transcript would minimize disagreement over the testimony of the witnesses, whether portions of the transcript were freely introduced in later hearings, whether the case was tried to the court or before a jury, and whether proposed findings of fact were required.

*Id.* at 211–12.

**a.** *Transcript of January 7, 1981 Proceedings*

■ On January 7, 1981 this case was called for trial. Plaintiff's counsel brought up certain outstanding discovery problems

and the Court adjourned the trial so these matters could be resolved. Defendant now seeks $207.40 in costs for a transcript of that proceeding, claiming it was necessary for use as evidence of plaintiff counsel's bad faith in its motion for attorney fees. The Court does not believe that such a transcript is necessary for use in this case. It did not have a direct relationship to the result of the trial, being prepared for the convenience of defendant, for the purpose of obtaining attorney fees to punish plaintiff's counsel for his alleged misconduct. Therefore, these costs will be denied.

b. *Expedited Daily Trial Transcript*

Defendant seeks $3,507.00 for a daily transcript of the rather lengthy trial of this cause. In the alternative, it seeks $2,278.00 for a non-expedited transcript. Defendant asserts that the transcript was necessary to prepare defense witnesses' testimony. Clearly, this purpose is for convenience of counsel and would not warrant an award of costs. Defendant also asserts that a daily trial transcript was necessary because plaintiff had been evasive in her depositions. Again, the Court is not convinced that a daily trial transcript was reasonably necessary to impeach plaintiff's testimony. This case was not complex and a defense counsel familiar with plaintiff's deposition testimony easily could have impeached any inconsistent statement at the time it was made at trial rather than requiring daily transcript to compare to her deposition testimony. Finally, defendant justifies the necessity of a trial transcript on a non-expedited basis because the Court requested proposed findings of fact and conclusions of law. However, the Court did not request a transcript, and although the trial in this matter was quite lengthy, the issues were quite simple. Moreover, the testimony of the witnesses was not so conflicting as to make a transcript necessary. The case revolved around the credibility of plaintiff and the absence, as a matter of law, of certain elements of a prima facie case. Reference to a trial transcript was not necessary to discuss these issues. The Court does not agree that a trial transcript, let alone daily copy, was reasonably necessary for use in the trial. Defendant has not shown the necessity for such transcript beyond mere convenience of counsel. *Galella v. Onassis,* 487 F.2d 986, 999 (2d Cir. 1973). Furthermore, the Sixth Circuit has cautioned litigants who may wish to be reimbursed for costs to obtain authorization from the district court prior to incurring large items of expense. *Northcross v. Board of Education of Memphis, supra,* 611 F.2d at 640. Defendants may have saved themselves some expenses had they sought such authorization. The costs of trial transcripts will, for these reasons, be disallowed.

B. *Attorney Fees*

Defendant also has filed a motion to recover attorney fees pursuant to 42 U.S.C. § 2000e–5(k). Defendant seeks an award of $97,490.55 in attorney fees, reduced, so as not to exact "vengeance," from its actual expenses of $167,490.55. Defendant contends that Dianne Hill pursued this action with subjective ill will, as a personal vendetta against BASF Wyandotte. Defendant also argues that aside from her subjective bad faith, plaintiff pursued a lawsuit that was frivolous and groundless, relying on *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

The Supreme Court in *Christianburg* held that:

> [A] district court may in its discretion award attorneys' fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

*Id.* at 421–22, 98 S.Ct. at 700–01. The Court concluded that:

> [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued

such a claim in *bad faith,* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

*Id.* at 422, 98 S.Ct. at 701 (emphasis in original). *Christianburg* makes it clear that an award of attorney fees to a prevailing defendant depends on whether plaintiff had a colorable claim and not whether she pursued that claim in good faith. Improper motivation in commencing and pursuing this litigation, although not a prerequisite to an award of attorney fees to defendant, is not irrelevant, however, and is a factor to be considered in determining the propriety and the amount of attorney fees to be awarded. *Id.; Faraci v. Hickey-Freeman Co.,* 607 F.2d 1025, 1028 (2d Cir. 1979).

Courts considering the question of awarding attorney fees to prevailing defendants frequently conclude that a plaintiff's claim was groundless if no evidence was produced at trial to substantiate plaintiff's claim of discrimination. *See, e.g., Harris v. Plastics Manufacturing Co.,* 617 F.2d 438 (5th Cir. 1980) (no evidence to support claim of race discrimination); *EEOC v. Camp,* FEP Cas. 1401 (W.D.Mich. 1982) (no evidence that discharge was groundless); *Dailey v. District 65, UAW,* 505 F.Supp. 1109 (S.D.N.Y.1981); *Lewine v. Narapache Hospital,* 25 FEP Cas. 1420 (D.Ariz.1980) (plaintiff failed to make a prima facie case of retaliation); *Woods v. State of New York,* 494 F.Supp. 201 (S.D.N.Y.1980) (not a modicum of substantiating evidence); *Obin v. District No. 9, IAM,* 487 F.Supp. 368 (E.D.Mo.1980) (no evidence offered to substantiate claim except plaintiff's own self-serving declaration). This Court likewise concludes that plaintiff's claims in this litigation were not substantiated at trial by any evidence and were without foundation in fact or law.

Plaintiff produced no proof at trial to substantiate her claims of sex harassment. She did not directly testify, nor did she produce any evidence from which an inference could be made, that Reginald Ferrell made acquiescence to his alleged sexual advances a condition of her employment. The evidence showed nothing more than a personality conflict with a supervisor that escalated into an ill tempered battle between two strong personalities. As a result, plaintiff's job performance and attitude deteriorated and she was put on probation, then discharged. Plaintiff further failed to produce proof of disparate treatment in connection with her claim that her secretary did work for a male employee that she would not do for plaintiff. Again, the testimony shows a personality conflict between Hill and her secretary that resulted in misunderstanding of the scope of their respective job duties, but not that Stacey ever refused to perform a task for Hill that she performed for Paul Bates because Hill was a woman.

Plaintiff showed nothing more to support her claims of race discrimination than that she is black and was put on probation and discharged. No evidence of impermissible racial motivation for her probation and discharge was presented. As to her claim of race discrimination in connection with college recruitment, she could not recall at trial the race of the other recruiters, which was, of course, fatal to her claim of disparate treatment. She offered no proof, besides her own speculation, in support of her claim of retaliatory discharge.

The conclusion that defendant is entitled to an award of attorney fees does not end the inquiry. The Court must proceed to ascertain the proper amount of the award. Defendant insists upon an award of the entire amount requested, calling the Court's attention to the plaintiff's uncooperative and hostile attitude throughout the course of this litigation. Indeed, as noted previously, although a finding of bad faith or vindictiveness is not required for a defendant to obtain attorney fees in a Title VII case, the plaintiff's conduct and motivation in pursuing the litigation are factors to be considered in determining the amount of the award. *See Faraci v. Hickey Freeman Co., supra; Fisher v. Fashion Institute of Technology,* 491 F.Supp. 879 (S.D.N.Y.1980).

As defendant notes, Dianne Hill's behavior during discovery and at trial was un-

cooperative and antagonistic, as was her attitude towards her supervisor and some of her fellow employees. Most important to the question of her motivation in pursuing this litigation is her refusal to cooperate in an internal company investigation, launched by BASF Wyandotte officials to investigate the basis of her claims of sex harassment and race discrimination. Hill offered no explanation for her refusal to discuss her accusations with BASF's Manager of Equal Opportunity Programs. Surely if she were sincerely interested in a remedy for what she perceived as discriminatory conduct, she would have cooperated in such an investigation. Her failure to do so, as well as her uncooperative attitude and evasive testimony at discovery depositions and at trial are evidence that this litigation was instituted and pursued not in a pursuit of the truth but was vexatious and brought for improper purposes. *See, e.g., Fisher v. Fashion Institute of Technology, supra.*

The motivation of the plaintiff in pursuing this litigation is only one of several factors considered in determining the amount of attorney fees to be awarded a prevailing defendant in a Title VII case. Plaintiff has provided no assistance to this Court in the exercise of its discretion to award something less than the $97,490.55 requested by defendant. Defendant argues that in light of the bad faith demonstrated by plaintiff in this matter, that the attorney fees awarded need not be reasonable, as is usually required, *citing Suzuki v. Yuen,* 507 F.Supp. 819, 821 n.4 (D.Hawaii, 1981). The *Suzuki* court, in dicta, was discussing the award of attorney fees "on equitable grounds," as distinguished from the situation, as is present here, where attorney fees are specifically authorized by statute. Title VII specifies that reasonable attorney fees to prevailing parties may be awarded. Furthermore, the *Christianburg* case permits an award of attorney fees to prevailing defendants in the absence of bad faith. Finally, this Court has not found that plaintiff acted in bad faith in the pursuit of this litigation, although there is indeed evidence of improper motivation. Therefore, the Court must determine what reasonable attorney fees would be in this case.

Most of the published decisions discussing the proper amount of an award of attorney fees to a prevailing defendant in Title VII cases since *Christianburg* are from the Second Circuit and the Southern District of New York. In *Faraci v. Hickey-Freeman, Inc., supra,* the Second Circuit discussed the factors to consider in determining the amount of attorney fees to award a successful defendant as follows:

> It [the award] should, first of all, reflect a reasonable compensation for work done, tempered by a concern for the difficulty of the case and quality of the advocacy. But because fee awards are at bottom an equitable matter, courts should not hesitate to take the relative wealth of the parties into account.
>
> Where the plaintiff can afford to pay, of course, the congressional goal of discouraging frivolous litigation demands that full fees be levied.

*Id.* 607 F.2d at 1028. The court added that although vindictiveness of a plaintiff's motivation was not a prerequisite to recovery, it is a factor that should be weighed in fixing an appropriate amount." *Id.* The district court in *Colucci v. New York Times Co.,* 533 F.Supp. 1011 (S.D.N.Y.1982) noted that:

> the equities of the situation are to be considered to assure that although the deterrent purpose of the statute is enforced, a losing party is not subjected to financial ruin.

*Id.* at 1013.

Certainly an award of attorney fees of $97,490.55 to defendants would impose an extreme hardship on plaintiff, notwithstanding defendant's unpersuasive argument that installment payments could be arranged to lessen the burden on plaintiff's $24,610 annual income. *Cf. Obin v. District No. 9, IAM, supra* (attorney fees of $44,000 not unjust burden on plaintiff whose net worth exceeded $200,000). Defendant is a large corporation and certainly is in a better position than plaintiff to absorb the costs of this litigation. *Cf. Fisher v. Fash-*

*ion Institute of Technology, supra* 491 F.Supp. at 888. (factor to consider is defendant's ability to pay to defend such suits, given the difficulty of such publicly-funded institutions in obtaining operating funding). The Court does not question the adequacy of representation by defense counsel. However, a large proportion of the attorney fees incurred by defendant in this litigation is attributable to defendant's selection of New York counsel to defend the lawsuit, requiring large expenditures on travel and living expenses and, of course, resulting in a higher hourly rate than that which prevails in the Detroit area. Hourly rates charged by lead counsel Ronald Green varied from $125/hour to $150/hour. Green attended nearly every pretrial conference and motion scheduled in Detroit, generally accompanied by another member of his firm and local counsel. Green was assisted during the trial of this case by Robert Jauvits, whose hourly rate ranged from $90–95/hour. Of course, defendant is entitled to select counsel of its choice. However, the issues in this case were not unusual, difficult, or complex. The attorney fees incurred by defendant appear to the Court to be in excess of the amount required to pursue a diligent defense of this particular litigation.

As noted by the court in *Woods v. State of New York,* 494 F.Supp. 201 (S.D.N.Y. 1980):

> However misguided plaintiff may have been in his litigious activities, the fees to be imposed upon him should be modest but consistent with fair reimbursement to defendants for those services necessarily required in resisting his claims. The defendants were not acting as private attorneys general vindicating public rights.

*Id.* at 205–06. The Court can only conclude in view of the equities of the situation, that the attorney fees requested by defendant in this case are far in excess of those reasonably required for the conduct of this litigation, and certainly are utterly beyond the plaintiff's financial means. To seek attorney fees in such an excessive amount under these circumstances reflects poorly on a defendant and its counsel.

When confronted with plaintiffs without adequate financial means to pay the attorney fees requested, courts in the reported decisions have awarded various amounts, generally under $5,000. *See, e.g., Coleman v. General Motors Corp.,* 667 F.2d 704 (8th Cir. 1981) ($5,000 attorney fees awarded); *Farachi v. Hickey-Freeman, supra* (plaintiff with monthly income of $462 and expenses of $399; $200 in attorney fees awarded out of $11,500 incurred); *Colucci v. New York Times Co., supra* (plaintiff's annual income $19,000, three dependents; $1,500 attorney fees awarded out of $33,175 incurred); *Dailey v. District 65, UAW, supra* (attorney fees of $4,000 awarded). Defendant already has been awarded a total of $1,352.52 in costs. An award of attorney fees in the amount of $3,000.00 would accomplish the deterrent purpose of the statute, afford defendant some compensation for services required in the defense of this action, yet not financially cripple plaintiff. A larger amount might be warranted in view of plaintiff's poor attitude during the course of this litigation, but the Court believes that she was genuinely indignant over what she perceived as sexual harassment by her supervisor, and pursued what she perceived as a meritorious grievance.

■ The Court further concludes that the conduct of plaintiff's counsel in this action does not amount to the bad faith or willful abuse of the judicial process that would warrant an award of attorney fees under the Court's inherent power to maintain the authority and dignity of the court. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980); *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974).

In summary, defendant's motion for attorney fees will be granted in the amount of $3,000.00. Imposition of attorney fees against plaintiff's counsel will not be allowed. An appropriate order will be submitted reflecting the holdings of this Court on both motions disposed of herein.